# RACY CREAM COMPANY v. MARY BELLE WALDEN.

Eastern Section. Oct. 31, 1925.

Certiorari denied by Supreme Court. March 24, 1926.

1. **Appeal and error. Evidence held to show gross negligence on part of defendant and sustain verdict of jury.**
   In an ·action to recover damages for personal injuries sustained by being struck by defendant's truck where evidence showed truck was being driven at a high rate of speed across a busy down town corner and driver was looking over his shoulder and not looking ahead and hit plaintiff standing near the curb when he had a wide street in which to pass her, held to be gross if not criminal negligence.

2. **Trial. In personal injury case held plaintiff made a prima-facie case by showing automobile belonged to defendant and injuries were caused by driver's negligence.**

In an action to recover for personal injuries caused by being struck by truck belonging to defendant where plaintiff proved negligence of driver and that he fled from accident and that truck was owned by defendant, held that under chapter 162, Act of 1921 as amended by chapter 59, Acts 1923, plaintiff made a prima-facie case and she was not required to show driver was in employ of defendant and acting within the scope of his employment.

3. **Statutes. Statutes are construed with reference to legislative intent.**

Every statute has to be construed with reference to its intended scope, and the purpose of the Legislature in enacting it. Where the language used is ambiguous, or admits of more than one meaning, it is to be taken in such sense as will conform to the scope of the act and carry out the purpose of the statute.

4. **Statutes. Chapter 162, Act 1921 as amended by Chapter 59, Act 1923, construed.**

In an action to recover damages for personal injuries caused by being struck by defendant's truck, held that chapter 162, Act. 1921, as amended by chapter 59, Act 1923, raises the presumption, upon proving the ownership of the automobile, that the same was being used with the master's authority, consent and knowledge and in his business.

Appeal in Error from Circuit Court, Knox County; Hon. A. C. Grimm, Judge.

Affirmed.

Roscoe Word, of Knoxville, for plaintiff in error.

B. C. Ogle and R. L. Pope, of Knoxville, for defendant in error.

SNODGRASS, J. For convenience the parties will be referred to as they were styled below.

This is an action for damages brought by Mary Belle Walden against the Racy Cream Company, a partnership composed of Charlton Karnes, George W. Callahan, J. G. Sterchi and J. A. Kingsolver, who were doing business under said name and style, to recover $15,000 as damages for personal injuries received by being run over by one of its trucks in the city of Knoxville.

The declaration first alleges that the defendant is a corporation, but later on was amended so as to allege that they are a partnership, composed as aforesaid.

It is further alleged that the defendant is engaged in manufacturing, distributing and selling ice cream and milk products, and for that purpose maintain large automobile trucks in which it carries and delivers its ice cream, butter, milk, etc., and that on August —, 1923, the plaintiff, while attempting to cross from the west to the east side of North Central Avenue, at or near Oldham Street, in the exercise of due care and caution for her own safety, was run over by the defendant with one of its large automobile trucks. She alleges that the car in which she was traveling north on said Central Avenue had been temporarily stopped on the west

side of said Avenue, against the curbing, and that she had just alighted therefrom, having taken one or two steps to cross said Avenue, when said truck of the defendant suddenly, violently, forcibly and without notice or warning struck her and her said car, injuring her as hereinafter stated, and knocked her car a distance of several feet down said avenue. She states that the negligence hereinafter complained of was so gross, careless and reckless, without any regard for life and limb, as that she is entitled to not only compensatory damages for her injuries, but to punitive damages also, for which she sues. That the defendant at the time of the accident was operating its automobile, through its agent and employee, in a very reckless and grossly careless manner, and at a high and excessive rate of speed of more than fifty miles per hour. That the street on which the accident occurred is more than the average in width, that this crossing is much used by wagons, automobiles and pedestrians, and the defendant knew or should have known of this fact. That at this time, however, said street was unobstructed by any wagon, automobile or anything that would have interfered with or have prevented the defendant from seeing this plaintiff, and that the defendant did see, or should have seen the plaintiff as she was walking across said street, and could easily have avoided hitting and striking plaintiff and have prevented the injury.

She states further that although the place where this accident occurred was in a thick and populous section of the city, and at or near said street crossing much used, and which was known to the defendant, it was running and operating, through its agent and employee, the said automobile truck at such a high and dangerous rate of speed that it was without due and proper, or any regard for the life, limb or safety of pedestrians and others' using said street; and she states further that at the time of the accident the said defendant not only failed to keep its car in proper control, but that it acting through its agent and employee was further grossly negligent and careless in looking back over his shoulder at the time he approached plaintiff and this crossing, and was not keeping proper or any lookout ahead, as was said driver's duty to do at said time and place. That defendant gave no warning or notice of the approach of said truck before striking her by sounding a horn, bell or otherwise.

That as a result of this accident the plaintiff sustained serious, permanent and painful injuries, was rendered unconscious, and was forced to go to a hospital and incur large bills for hospital, nurse hire, doctor, medicine, etc., in her effort to be cured, amounting to $1,305. She avers further that she sustained a severe blow to her head, in which the scalp was severly cut; that her hip was

strained, bruised and injured; that several of her ribs were broken, and that she received serious and internal injuries; from all of which she suffered severe pain and great mental anguish, and continues to suffer great pain, and is still a cripple, and unable to go about except with the aid of a cane or when led about by another person.

The second count is substantially the first, and in it it is averred that at the time of the accident the defendant, through its agent and employee, was operating said truck at a high and excessive rate of speed of more than twenty miles per hour, and in violation of the express statute of the State, and in violation of the ordinance of the city of Knoxville, and failed to keep or maintain proper lookout ahead in said public street, as was its duty; that the place where this accident occurred was in a thick and populous section of the city, and the crossing was much used by wagons, automobiles and pedestrians, which fact was known to defendants, and that there was no obstruction on said street to have prevented the defendant from seeing her, and that said defendant did or should have seen the plaintiff, and if it had been operating its truck at the rate prescribed by law, said accident would not have occurred. That the negligent acts and omissions of said defendants, together with other negligent acts, was the sole, prime and proximate cause of the injury, without fault or negligence on her part.

To this declaration a plea of not guilty was entered, and the cause came on for trial at the ———— term of the circuit court of Knox county, before the judge and jury only upon the evidence introduced by the plaintiff. The defendants never introduced any evidence, but relied upon their insistence that the plaintiff had not made out any case. Their motion, which was made at the proper time, for a directed verdict, being overruled, the case was submitted to the jury, which returned a verdict in favor of the plaintiff, fixing her damages at $7,000.

A motion for a new trial was made, upon consideration of which the court suggested a remittitur in the sum of $2,000, which was accepted under protest, and thereupon the motion was in other respects overruled.

A judgment was rendered against the defendant in the sum of $5,000, from which an appeal was taken to this court, and defendants have assigned errors, as follows:

"1st: The court erred in not peremptorily instructing the jury to return a verdict in their favor on motion of defendants at the close of plaintiff's testimony, which was all the evidence introduced in this case, because there was no evidence to support the verdict of the jury."

"2nd: Because there is no evidence to support the verdict of the jury."

"3rd: Because the verdict of the jury is so excessive as to evince passion, prejudice and caprice upon the part of said jury."

"4th: Because the court erred in charging the jury as follows:"

"In considering the evidence you are justified in drawing all reasonable conclusions that the evidence justifies. In this connection, gentlemen, I charge you further that the presumption always prevails that where competent and pertinent evidence is within the peculiar knowledge and control of one or the other of the parties, and is withheld by such party, it creates a presumption that if the evidence was introduced it would be against the interest and insistence of the party thus withholding it. In this connection the court further instructs you, gentlemen, that the rights of all men are in the keeping of the courts and consistency of procedure is therefore required of all those who come into, or are brought before them. It may be laid down as a broad proposition, says our Supreme court, that one who, without mistake induced by the opposite party, has taken a peculiar position deliberately in the course of the litigation, must act consistently throughout that litigation and cannot play fast and loose in a court of justice."

"5th: Because the court erred in charging the jury as follows, to-wit:"

"I now charge you with reference to the law pertaining to negligence. If you believe from the evidence in this case, and the reasonable and legitimate conclusions to be drawn therefrom, that the truck in question belonged to the Racy Cream Company, that it was being operated by the driver of Racy Cream Company and that the said driver was on a mission of the company at the time the truck was being thus driven,—then it was the duty of defendants, as well as the duty of the plaintiff, to exercise ordinary and reasonable care at the time this injury occurred, to the end that it might not occur; and if either plaintiff or defendant failed or neglected to exercise ordinary and reasonable care, then the party thus failing to exercise ordinary and reasonable care was guilty of negligence."

"6th: Because the court erred in charging the jury as follows, to-wit:"

"If, however, both parties were negligent, and the defendant's negligence was the prime and proximate cause of these injuries, and the plaintiff's negligence contributed but remotely thereto,—then the plaintiff would still be entitled to recover, but under the law it would be the duty of the jury to take into consideration plaintiff's said contributory negligence in award-

ing the damages; that is to say, it would be the duty of the jury to reduce her damages in proportion to her contributory negligence.''

''7th: Because the court erred in charging the jury as follows, to-wit:''

''If you believe from the preponderance of evidence in this case, including the reasonable, legitimate inferences to be drawn therefrom, that the defendants owned said truck, that they were operating it in a reckless and careless manner, at a rate of speed that was greater than was reasonably safe in that particular community, in that populous locality, then defendants would be guilty of negligence, and if such negligence was the prime and proximate cause of this injury, plaintiff would be entitled to recover.''

''8th: Because the court erred. in charging the jury as follows:''

''So, also, if you believe from the preponderance of evidence in this case, and the reasonable and legitimate inferences to be drawn therefrom, that this was defendant's truck being operated by defendant's driver at the time of this collision, that the defendants' said driver saw, or by the exercise of ordinary care and prudence could have seen, the plaintiff in time to have avoided the injury, and that a failure to do so was the prime and proximate cause of plaintiff's injuries—then plaintiff would be entitled to recover.''

''9th: Because the court erred in charging the jury as follows, to-wit:''

''If you believe from the evidence in this case, and the reasonable and legitimate inferences therefrom, that this truck belonged to defendants, and they were operating it at the time of this collision, and that the driver was operating said truck without looking, without using reasonable precaution to observe obstructions or pedestrians on the street, and that his failure to do so was the prime and proximate cause of plaintiff's injuries, plaintiff would be entitled to recover.''

''10th: Because the court erred in charging the jury as follows, to-wit:''

''If you believe from the evidence in this case, including all reasonable and legitimate inferences to be drawn therefrom, that the truck in question belonged to defendants, that the defendants were operating this truck at the time the plaintiff was injured, that said truck was being operated at that time at a rate of speed in excess of twenty miles per hour,—the operation of said truck under such circumstances would be negligence, and if as already indicated, you find that the truck be-

longed to defendants, that defendants were operating the truck at that time in excess of twenty miles per hour, and that such negligence was the prime and proximate cause of plaintiff's injuries,—the defendants would be liable and plaintiff would be entitled to recover.''

''11th: Because the court erred in qualifying defendants' request No. 1, made at the conclusion of the court's charge, which request embodied a sound proposition of law which had not been given by the court in his regular charge. Said request was as follows, to-wit:''

''I charge you further, gentlemen of the jury, that in order for the plaintiff to recover against the defendants, the proof must show by a preponderance of the evidence, that the truck not only belonged to the defendants, but the driver of said truck at the time of the accident, was an employee of the defendants and that said truck was being used on the business of defendants.''

''The court upon defendants' request charged the jury as follows, to-wit:''

''I charge you further, gentlemen of the jury, in order for plaintiff to recover against the defendants, the proof must show by a preponderance of evidence that the truck not only belonged to the defendants, but that the driver of said truck at the time of the accident was an employee of defendants, and that said truck was being used on the business of defendants, at the time,—subject, however, to the rule already announced that the presumption always prevails that where competent and pertinent evidence is within the peculiar knowledge and control of a party, and is withheld by such party, the presumption is that the evidence thus withheld is against the interest and insistence of the party so withholding it.''

''It was highly prejudicial to defendants and error upon the part of the court to re-charge the jury, in connection with defendants' special request, on the question of presumption always prevailing where competent and pertinent evidence is within the peculiar knowledge and control of a party and is withheld by such party, etc. The facts in this case, nor the fact that the defendants failed to introduce any evidence at all did not justify such a charge.''

The plaintiff has likewise assigned as error the reduction of her judgment to the sum of $5000, and asks that it be increased to $7000 in accordance with the verdict of the jury.

The proof abundantly sustains practically every specification of negligence contained in the declaration. The negligence was gross, if not criminal; and, while the plaintiff was severely injured, the

only wonder is that she was not killed. The heavy truck in the hands of this reckless driver bore down upon her at a speed in excess of twenty miles an hour, and in violation of the law, some of the witnesses say at thirty to thirty-five miles an hour, and struck her in the open street as she had stepped from her automobile at the curb, where it had gone dead and stopped near the curbing on the left-hand side of the street and within a very few feet of the intersection of North Central and Oldham street. She was intending to cross said Central Avenue from the west to the east side when she stepped from her car, to effect some business engagement, when without any warning signal, without having his truck under control, or such control as might have been thought essential at the place of the accident, and without maintaining any lookout to discover her presence, he ran over her. On the contrary the proof shows that when such lookout would have been timely he was looking back or away from the place ahead where his attention might have been expected to be and, swerving in upon her, when a safe, straight clearance was available, struck her and the automobile at the curb also, at about the same time, striking the car about half way of the back right fender, knocking the back end of the car onto the sidewalk, and knocking the plaintiff up into the air, and she fell into the street. The street was thirty-eight feet wide, and plaintiff's automobile only occupied about five feet of it near the curb, and there was no obstruction whatever to have prevented the truck from passing safely in the clear, and if attention had been paid by the driver it could have been done. After the wreck the driver ran away and his name was not learned, but it was simply shown that the truck belonged to the defendants. This accident occurred in August, 1923, about nine o'clock in the forenoon, in the city of Knoxville. It is not shown what if-anything the truck was loaded with, but defendants' trade name, Racy Cream Company, was on it.

Dr. M. M. Copenhaver, a physician and surgeon, graduate of the Tennessee Medical College and of more than twenty years' practice of his profession saw the plaintiff in the little meat shop where she had been taken a few minutes after the accident. He seems to have attended her during the time since. Testifying as to her injuries, he said:

"She looked to be in a dying condition; she was hardly breathing; just looked like a dead woman."

"Q. Was she conscious or unconscious? A. Unconscious.

"Q. Did you see any external wounds? A. Yes, she had a scalp wound in the back of the head, about, I would judge, probably two inches long, and when I dressed it at the hospital it showed that something had struck the scalp and cut away about probably one-sixteenth of an inch or more of the bone; some sharp cut instrument had done it."

"Q. Assuming that Mrs. Walden was struck by a truck loaded with cream cans and ice, which was running while she was standing in the street, and the truck running at a rate of speed of some thirty to thirty-five miles an hour, and she was knocked a distance of nineteen and a half feet, striking upon the paved street, such as North Central Street was at that time, state to the jury if in your judgment that blow on the skull was reasonably well calculated to produce, and one which would produce, impairment of the hearing, especially on that side of the head? A. It might have done it, yes.

"Q. Did you see Mrs. Walden any more? A. Yes sir.

"Q. Where did you see her? A. Someone had called the ambulance, and I had her taken to the hospital.

"Q. Fort Sanders Hospital? A. Yes sir.

"Q. Did you treat that wound and any others you found on her at the hospital? A. Yes, I went to the hospital and took some sutures in this wound on the head; and she had some broken ribs, and we strapped her practically all around and put her to bed, and she lay there possibly a week, I do not remember the exact length of time, in an unconscious condition, in practically a dying condition for nearly a week, or probably a week.

"Q. How often did you visit her there? A. Sometimes two or three times a day. Every time I was in the hospital I visited her.

"Q. Do you remember after she was taken from the hospital that you visited her elsewhere? A. Yes sir.

"Q. Where? A. I believe we first took her out on Scott Street.

"Q. Did you treat her there? A. Yes sir.

"Q. Where did you treat her after that? A. She was next taken to some boarding house in town, and I treated her there.

"Q. State if Mrs. Walden was kept at these various places in the city after she was taken from the hospital at your direction? A. Yes, I treated her down in Beaver Creek Valley, out there.

"Q. Was any other doctor during the first week of her illness called in by you or anyone? A. Yes, Dr. Kyle Copenhaver and Dr. Hodge, and I don't remember who else. I had several doctors to see her. She was spitting blood, which indicated that some of these broken ribs had punctured the lung.

"Q. Is that the same Dr. Hodge who this week examined the plaintiff in your office? A. Yes sir.

"Q. Was there anything abnormal about the lower limbs? A. Yes, at the present time the right limb is slightly smaller

than the left, from an involvment of the sciatic nerve; she developed this sciatic condition, which was evidently from an injury to the sciatic nerve, just in a few days after she was in the hospital, and it gave her tremendous pain, and was so bad she had to be given a hypodermic treatment of morphine to reduce the pain, which was excruciating and, added to her broken ribs, she had pain on every respiration, every time she breathed.

"Q. State the place where you find the abnormal condition in the right leg? A. It appeared to be smaller all the way down.

"Q. State if in your judgment as a medical man, from your treating her, and your recent examination of her, if her right leg is in what we call in common language in a perishing condition? A. Yes, her right leg appears to be perishing, and is not as large as the other.

"Q. Is that condition you found in the plaintiff temporary or permanent in character? A. Well, she may get well after a long time, and she may improve, but the probability is that she will not.

"Q. Has her condition improved in the last six months? A. No sir."

Some photographs of the broken ribs were filed, which indicated the places of the fractures.

All of the evidence shows, or tends to show, that the injuries were serious, and permanent at least as to the leg.

From the evidence, considering the assignment of error of plaintiff below first, and her application to have the judgment entered in accordance with the verdict of the jury, as to the amount the writer sees no reason to conclude that their verdict was either excessive or the result of caprice or prejudice. He thinks from the nature of the injuries and the suffering that they have entailed, and will continue to entail, coupled with the impairment of capacity, which evidently has been the result, and considering the previous activities of this woman, who was about fifty-four years of age, healthy and vigorous, and the manager of her farm, that if she was entitled to the $5000 she would be equally entitled to the $7000, which was the verdict of the jury. And, too, the wantonness and utter disregard with which these injuries were inflicted, when considered in connection with the fact that the jury has mitigated the claim from $15,000 sued for, is a circumstance indicating that they were neither prejudiced nor capricious. However, my associates think the remittitur was proper.

The main question in this case, however, is as to whether notwithstanding the negligence of the driver, which was abundantly estab-

lished, as well as the injuries inflicted as a consequence thereof, the defendants are liable simply upon this showing, or as to whether (conceding that the truck was the property of the defendants) the driver of the truck was the agent or employee of the defendants, and, if so, was he in the line of his duty or engaged in the master's business when the injuries were inflicted. Plaintiff insists that these two facts may be shown by circumstances, and that in this case the circumstances are such that it might have been legitimately inferred, both that the driver was the servant of defendants and that he was actually engaged in its business when the injuries were inflicted; that this presumption should especially be indulged because it appears that the driver fled immediately after the accident, so that it could not be ascertained what his name is, or was; that the fact as to whether or not he was the servant of defendants and engaged in their business is and was peculiarly within the knowledge of the defendants, and that their failure to deny these two important things under the circumstances, is a circumstance from which the jury might reasonably infer that he was their servant and engaged in their business.

On the other hand in this particular it is insisted by the defendants that no prima-facie case being made out as against them, no obligation rested upon them to offer any evidence, and that to hold otherwise under the circumstances of this case would be in effect to require the defendants to furnish evidence essential to the plaintiff's case.

In the case of King v. Smith, 140 Tenn., 538, from Shelby county, decided at the April term, 1918, the question of whether proof of the ownership of an automobile merely would furnish grounds for the presumption that it was then in the possession of the owner, and that whoever was driving it was doing so for the owner, as had been held in some jurisdictions, was reserved, because it was said that in the case then under investigation it was not left to such presumption, it being proved that the automobile was being driven by the defendant's son, with defendant's permission, for the son's pleasure, and that the defendant bought the automobile partly for such purpose. But in the case of Davis v. Auto Tire & Vulcanizing Co., where an infant had sustained injuries by collision with an automobile, there was evidence that the automobile was the property of the defendant, but no direct evidence that it was in their service, nor was there any direct evidence that the driver of the automobile was the servant of the defendant, or that he was acting within the scope of his employment. It was insisted by the plaintiff that the car belonging to the defendant raised the presumption of law that the driver of the car was defendant's servant, and that he was acting within the scope of his employment at the time of the accident. The court said in that case: ''That no such presumption exists is

directly held in the case of Frank v. Wright, 140 Tenn., 538, 205 S. W. 434," and refers to the case of King v. Smith, as having reserved the question. Continuing the court said further: "It is well known that the authorities in the various states are divided upon this question, but we think the rule in Tennessee is put at rest by the case of Frank v. Wright. It is therefore unnecessary for us to cite or review the authorities, further than to say that the cases are cited and some of them reviewed in King v. Smith, and Frank v. Wright." The court said further: "In this case the defendant Newsom was placed on the stand by the plaintiff and was asked if the car which caused the injury was not his, and if the chauffeur was not his. He denied both questions, or stated that he did not know," which was held to be equivalent. Counsel for plaintiff insisted that the duty devolved upon the defendant to introduce proof which would rebut the unfavorable inference which might be based on the proven ownership of the car, but it was held that this rule applied only where the plaintiff's proof and the legal deductions therefrom makes out a prima facie case. Citing W. U. Telegraph Co. v. Lamb, 140 Tenn., 111; Fisher v. Insurance Co., 124 Tenn., 483. The court then further held that the defendant's liability arises from his supposed control over his servant at the time of the accident; that this control is not established directly or inferentially by proof only of the ownership of the car; that the identity of the servant and his employment by defendant must be established by the proof, as well as the ownership of the car, before it can be inferred that the servant was acting within the scope of his employment. The court said: "We do not say that both of these facts may not be established by circumstances, but there must be some evidence of the ownership of the car, the identity and employment of the servant, before it can be inferred that he was acting within the scope of his employment at the time of the accident. It must not be forgotten that usually the defendant has not authorized the accident, and his liability for it is based upon his legal control of the servant whose negligence caused it. This is the substance of the holding in the case of Frank v. Wright, supra, although the court assumed rather than stated the reason therefor. Goodman v. Wilson, 129 Tenn., 464, 166 S. W., 752; 51 L. R. A. (N. S.), 1116."

In the case of Core v. Resha, 140 Tenn., 408, which had under consideration the Act of 1905, chapter 173, and which referred to other cases as having held the same thing, it was held that since the passage of said act an automobile is not to be deemed to be included with instrumentalities that are inherently dangerous, and the basis of liability was again defined in the words of Goodman v. Wilson, as follows:

"It is undoubtedly true as a general proposition of law that the doctrine of respondeat superior applies only when the relation of

master and servant is shown to exist between the wrongdoer and the person sought to be charged with the injury resulting from the wrong at the time and in respect of the very transaction out of which the injury arose, and the mere fact that the driver of the automobile was the defendant's servant will not make the defendant liable. It must be further shown that at the time of the accident the driver was on the master's business, and acting within the scope of his employment. . . . Is the rule changed by reason of the provisions of our Automobile Act, above referred to, touching the permissive use of an automobile? The Court of Civil Appeals, it fairly appeals (appears?) from its opinion, held that it is not, and we think correctly."

After quoting that portion of the act fixing a lien, the court continued:

"The act deals, not with the liability of the owner in an action in personam for damages,' or with him from the standpoint of employer, but with the subjection of the property of the owner—the automobile—to a lien when he is found to have permitted its use. In order to a subjection of the machine to the lien, the test is not whether the chauffeur was at the time acting in the line of the duty owed by him to his employer. The test by which that right is determined is not the "scope of employment" of the driver, but the scope of the authority or permission given by or imputable to the owner, and there may be a lien enforcement, though the machine is not used in furtherance of the owner's business. Parker-Harris Co. v. Tate, supra. The basic rule of respondeat superior, which measures one's liability as employer for the acts of his employee, does not apply."

"On the other hand, the rule of common-law liability of an employer, after the passage of the act as well as before, governs when the action is against the owner as employer or in personam; that is, where a judgment is sought fixing upon the defendant, deritively. personal responsibility for a wrongful act of another as his employee. Such a liability or judgment is, of course, not one that is confined to the value of the machine. That the two liabilities are by the statute left as distinct things may be brought into clearer outline by a consideration of two other differentiating factors: (a) Willful negligence of the driver is requisite to the lien liability; mere negligence of an employee acting in the line of his duty suffices to fix the derivative liability. (b) The statute subjects to lien liability the car of a garage owner where it is used by a customer, although the doctrine of respondeat superior is in no sense applicable. By no principle of law may such an owner be made to respond for damages in excess of the value of the car. However, if the one driving the car be his employee, there might be added, to the liability of the car of the owner to respond under the provisions of

the statute, a liability of the same person as employer to answer for the full damage sum under the common-law principle of respondeat superior.''

''The pending suit is one to fix liability on defendant as employer and in personam. There is no attempt to attach the car, or to enforce a lien against it for the damage done within the limits of its value, as against defendant Mrs. Core as mere owner. As we have seen, in such case liability must be based upon common-law principles, which are illustrated and enforced in Goodman v. Wilson, and the long line of cases referred to above. The true test then is, as above said, not permissive use, but use in the employer's business.''

In the case just quoted it was held that the chauffeur at the time, though driving her car, was not the servant of Mrs. Core, but the servant of the Board of Commissioners, to whom she had hired the car, and the action of the Court of Appeals in reversing and dismissing the case was affirmed. This was a case where the automobile, being driven by the chauffeur, on its way to convey the said commissioners collided with a minor.

From the foregoing cases, which are quoted at length because they illustrate the observations hereinafter made, especially the latter case, which uses phraseology similar to that found in the Act of 1921, to be referred to, indicating that this case was in the mind of the Legislature in the enactment of said statute, it will be perceived that unless aided by the statute as authorizing the use of necessary persumptions in making out the prima-facie case, that no prima-facie case was made; and, therefore, that it was error to have instructed the jury as to any fact alleged to be peculiarly within the knowledge of defendants, or as to any inference that might be drawn therefrom as supporting or affording any presumption they might entertain. However, what the court charged the jury is immaterial, and the assignment based thereon not necessary to be considered, if as a matter of fact there should be found to be no evidence upon which to predicate a verdict against the defendants. And if as a matter of fact, coupled with the facts proven as to the negligent injury, and the ownership of the car, two facts well established and not denied in the proof, the jury under the statute was authorized to entertain the presumption that the driver was the defendants' servant, engaged at the time in the transaction of their business, then a clear case of liability was made out, and it being unopposed by any proof, the court was authorized to say to the jury that a liability was established, and the only thing necessary for them to do would have been to assess the damages. Therefore a charge upon any phase of the proof for the purpose of establishing the main question, or the prime question, was harmless error if incorrect. To our mind the question as to whether or not the

facts proven authorized the presumption, or made the prima-facie case, depends upon chapter 162 of the Acts of 1921, and the amendment thereto had by chapter 59 of the Act of 1923, which made the Act, with its title, read as follows:

"AN ACT to promote safety in the use and operation of automobiles and other motor-propelled vehicles by defining what shall be prima-facie evidence of ownership of same, and the use of same, in the owner's business in actions for personal injuries and property damage.

"SECTION 1. Be it enacted by the General Assembly of the State of Tennessee, That in all actions for injury to persons and damage to property caused by the negligent operation or use of any automobile, auto truck, motorcycle or other motor propelled vehicle within this State, proof of ownership of such automobile, auto truck, motorcycle, or other motor propelled vehicle, shall be prima-facie evidence, and raise a presumption that said automobile, auto truck, motorcycle, or other motor propelled vehicle at the time of the action sued on was being operated and used with the authority, consent and knowledge of the owner in the very transaction out of which said injury or damage or cause of action arose.

"SEC. 2. Be it further enacted, That proof of the registration of said motor propelled vehicle in the name of any person, firm or corporation as required by chapter 173 of the Public Acts of 1905, and all Acts amendatory thereof, to secure license and license numbers for the operation of said motor propelled vehicle, shall be prima-facie evidence of ownership of said automobile, auto truck, motorcycle or other motor propelled vehicle by the person, firm or corporation in whose name said motor propelled vehicle is registered, and that such proof of registration shall likewise be prima-facie evidence that said automobile, auto truck, motorcycle or other motor propelled vehicle was then and there being operated by the owner or by the owner's servant for the owner's use and benefit and within the course and scope of his employment."

"SEC. 3. Be it further enacted, That all laws and parts of laws in conflict with the provisions of this Act be and the same are hereby repealed, and that this Act take effect from and after its passage ,the public welfare requiring it.

"Passed April 8, 1921.

"Approved April 9, 1921."

Undoubtedly, as manifest from the caption of the Act, it was the purpose or intention of the Legislature to create one or more new rules of evidence in these automobile cases under which mere proof of ownership of an automobile effecting an injury, being negligently

operated, should establish a prima-facie case of liability against the car, or against the owner, and thus bring our State in line with those holding this to be a correct conclusion without the aid of the statute. The wisdom and utility of such a change can hardly be doubted from a consideration of the facts of this particular case.

While the circumstances in and of themselves do not necessarily show that the driver was the agent, employee or servant of the owner at the time of the accident, and if so that he was engaged in the master's business when the injury was effected, yet good reasons are shown justifying the purposes of the Legislature, if such justification was necessary, as to why these two essential facts should be presumed. The driver fled immediately after the accident, so that his name or identity was not known, and the difficulty of proving the same is therefore manifest, together with the necessity of indulging some such presumption, or else justice will be defeated in an ever increasing number of similar incidents. On the other hand, if in any case the presumption should be ill founded, it would be an easy matter to furnish facts to controvert it, which are, or would be, more easily within the knowledge of the defendants, or at least much less difficult for them to establish, and thus the ends of justice be subserved. Besides, as it appears from the facts of this case, the proposition has attractions of original merit. When evidence has been furnished as to the negligent injury by one driving the defendants' truck, presumably from the name Racy Cream Company on the truck, engaged in the sale, distribution or transportation of cream or its products, and at a time of day, nine o'clock in the forenoon, in a city where such business might reasonably be pursued, and where just such an outfit so manned might reasonably have been employed, with a woman almost dead in the street from having been wantonly mowed down by its rapid and illegal operation, it furnishes a combination of facts and circumstances from which, it could be more reasonably inferred that the driver was the owner's servant rather than a thief, and that he was engaged in the owners business rather than his own, or that of someone else in which the truck was borrowed or hired. At least these first conceptions are less involved and more direct than the latter, and are the most natural and legitimate to which the mind first gravitates, and why not indulge them? These first-hand legitimate inferences call for explanation rather than to be combatted by other circumstances neither ordinary nor proximate. It is not a case of draft without reason, but a case of the accusing finger pointing naturally to a conclusion which the Legislature in the act just mentioned sought to mature as a prima-facie case. Has the body of the act in the use of the terms employed sufficiently effectuated the purposes expressed in the title? Considered without reference to the amendment, we think it has. It is conceded that while under our con-

stitution the body of an act cannot be broader than the restrictions of the title, it may be less pretentious, and thus fall short of the purpose expressed; and in this case authority for the prima-facie case claimed to justify any personal judgment against the defendants must be found in the use of the word ''authority,'' as the other words ('knowledge and consent'') used express nothing more than the permissive authority necessary to effect a lien against the machine, if the negligence consists in willful violation of the statute. It is true that in a certain sense the word ''authority'' has a meaning synonimous with the other terms, ''konwledge and consent,'' but used as it is in the act, and in connection with the other terms mentioned, it may have another meaning implying direction or supervision, signifying control of subordinate agency. As expressed in 6th. Volume of C. J., page 864, with reference to the term ''authority,'' in defining same it is said: ''In another sense power delegated by a principal to his agent or attorney. . . . Power to act, whether originally or delegated. Control over. Jurisdiction. The word is generally used to express a derivative power.''

If then the term ''authority'' is ambiguous, and may be used in the light of either one of the foregoing senses, should it not therefore be construed in that light, under a well-known canon, to give effect to the evident purpose expressed in the title, to be that proof of ownership of such truck (using one of its proper meanings in place of the term) shall be prima-facie evidence and raise a presumption that said truck at the time of the action sued on was being operated and used with the power delegated by the principal to his agent, or with the control over, consent and knowledge of the owner in the very transaction out of which said injury, or damage, or cause of action arose?

''Every statute has to be construed with reference to its intended scope, and the purpose of the Legislature in enacting it. And where the language used is ambiguous, or admits of more than one meaning, it is to be taken in such sense as will conform to the scope of the act and carry out the purpose of the statute.'' Black on Interpretation of Laws, page 56.

''The object of all interpretation and construction of statutes is to ascertain the meaning and intention of the Legislature, to the end that the same may be enforced.''

''This meaning and intention must be sought first of all in the language of the statute itself. For it must be presumed that the means employed by the legislature to express its will are adequate to the purpose and do express that will correctly.''

''If the language of the statute is plain and free from ambiguity, and express a single, definite, and sensible meaning, that meaning is conclusively presumed to be the meaning which the Legislature intended to convey. In other words, the statute must be interpreted

literally. Even though the court should be convinced that some other meaning was really intended by the law-making power, and even though the literal interpretation should defeat the very purposes of the enactment, still the explicit declaration of the Legisture is the law, and the courts must not depart from it."

"If the language of the statute is ambiguous, or lacks precision, or is fairly susceptible of two or more interpretations, the intended meaning of it must be sought by the aid of all pertinent and admissible considerations. But here, as before, the object of the search is the meaning and intention of the Legislature, and the court is not at liberty, merely because it has a choice between two constructions, to substitute for the will of the Legislature its own ideas as to the justice expediency, or policy of the law." Ib., pp. 35-36.

"The use of inapt, inaccurate, or improper terms or phrases in a statute will not defeat the act, provided the real meaning of the Legislature can be gathered from the context or from the general purpose and tenor of the enactment. In such cases, the words in question will be interpreted according to that meaning which the Legislature actually intended to express, although this may involve a departure from their literal signification." Ib., 73.

Nor, according to another rule, is the ordinary meaning of the words and the proper gramatical effect of their arrangement in the act to interfere with the giving effect to the intention of the Legislature when it is otherwise manifest.

From the foregoing rules of construction as the statute stood before the amendment, we think it should be given the construction contended for by the plaintiff below, as authorizing the presumption of use in the masters service at the time. Was the meaning of the first section of the act in any way necessarily abridged by chapter 59 of the Acts of 1923, which amended only the second section of said act, by adding the following clause:

"And that such proof of registration shall likewise be prima-facie evidence that said automobile, auto truck, motorcycle or other motor-propelled vehicle was then and there being operated by the owner or by the owner's servant for the owner's use and benefit and within the course and scope of his employment."

We think not. But in the light of what has gone before, it should be considered as confirming by the words "shall likewise" the interpretation placed upon the first section. We are aware that there is another rule of construction, that where a statute assumes to specify the effects of a certain provision, it is to be presumed that no others are intended than those described. But this is no hard or inflexible rule, and must itself give away to, or be modified by, the presumption that the Legislature intended no change in the existing statutes, unless so expressed or necessarily implied. There

was no reason for the enactment of two rules, and especially that a larger responsibility should be effected by proof less comprehensive than that evidencing simply the lien liability of the car. This would involve an absurdity, against which another presumption guards. One rule of presumption was sufficient for the prima-facie in either case, and we think it was intended by the amendment to accomplish this, no matter in which way the ownership was established, and that the phrase "shall likewise" meant that this unrestricted presumption shall obtain in the one instance as well as the other, and not that the effect of the amendment should be a modification of the first section, effecting the creation of two rules, one of which was altogether unnecessary.

Upon the whole, therefore, aided by the statute, we think a clear and sufficient prima-facie case was made out. Therefore there was, and is, proof to sustain the verdict of the jury, and that the court was not in error in refusing to peremptorily instruct the jury to return a verdict in favor of the defendants. The first and second assignments of defendant are therefore overruled.

Overruling the assignment of error by the plaintiff below as to the remittitur required, and likewise the assignment of the defendant that the judgment as permitted to stand is excessive, and the other assignments of error as to the charge of the court on legal questions as immaterial, it results that the judgment of the circuit court is affirmed, with costs against appellant and their security.

Portrum and Thompson, JJ., concur.