EAST TENNESSEE & WESTERN NORTH CAROLINA MOTOR
TRANSP. CO. *v.* BROOKS.

(*Knoxville,* September Term, 1938.)

Opinion filed November 25, 1938.

Meek & Tate, of Knoxville, for plaintiff in error.

John R. King and W. T. Coleman, both of Morristown, for defendant in error.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This suit was brought by the administrator of Tressa Brooks, alleging that she was killed by the negligent operation of a motor truck belonging to East Tennessee and Western North Carolina Motor Transportation Company, hereafter called defendant. There was a verdict and judgment in favor of the administrator for $5,000 in the circuit court. This judgment was affirmed by the Court of Appeals and we have granted a petition for *certiorari*.

The deceased was killed on the Andrew Johnson Highway, near Russellville, Tennessee, about dark on the evening of November 28, 1936. She was run down by a truck and there is ample evidence as to the negligent operation of this vehicle. The controversy is as to whether this truck was the property of the defendant and further as to whether it was being operated in defendant's business at the time of the accident.

Witnesses near the point of the accident saw the truck that ran over the young woman and these witnesses could only describe it as a large, yellow truck with a canvas drop curtain in the rear. These witnesses did not get the license number of the truck nor did they observe any lettering on the body of the vehicle. There was testimony as to the speed the truck was making at the time of the accident, which occurred, according to plaintiff's theory, about 6:20 P. M. The truck was going east. At 6:42 P. M. witnesses saw a large, yellow truck, with a canvas drop curtain in the rear, pass Mosheim, between thirteen and fourteen miles east of Russellville. One of these witnesses testified that this truck seen at Mosheim bore the name of defendant on its body. A calculation is made

of the time necessary for the truck that struck deceased, traveling at the rate of speed proven, to proceed from Russellville to Mosheim, and from this it is deduced that the truck seen at Mosheim, with the drop curtain in the rear and bearing the name of the defendant, was the same truck that ran over the deceased at Russellville.

If we allow the inference drawn by the administrator as permissible, nevertheless the case is not made out. Such proof and such inference only go to the extent of indicating that a truck owned by the defendant ran over the young woman. There is nothing to show that this truck was being operated with the permission of the defendant and that it was being used in defendant's business at the particular time.

It is true that the defendant operates a line of freight trucks between Knoxville and Johnson City and that these trucks pass along the Andrew Johnson Highway and go through Russellville and Mosheim. It is further conceded by the defendant that one of its trucks, operated by one of its employees, hauling freight on the regular schedule, passed along this highway going east and passed through Russellville somewhere near the time of the accident. The driver of this truck, however, said that he struck no woman or other object on this trip, and employees of defendant who examined the truck when it reached Johnson City testified that the body of the truck showed no sign of anything having come in contact with it. Furthermore, the employees of defendant testified that the truck going from Knoxville to Johnson City on this particular evening had solid steel doors in the rear, as did all defendant's trucks engaged in transportation between city and city. They said that defendant had no trucks with canvas drop curtains in the rear engaged in

such transportation. That the only trucks owned by defendant with canvas drop curtains in the rear were used for pick-up trucks within the cities where defendant did business.

The proof tends to show that the Andrew Johnson Highway is a through highway, much traveled, and that yellow trucks owned by several other concerns customarily ply this route.

All the proof before us, therefore, as is evident from the foregoing, is to the effect that the truck operated in defendant's business passing through Russellville near the time of the accident was not the truck striking the young woman. Although the truck striking the young woman was defendant's truck, there is nothing to show under what circumstances, by whom, and for what purposes such truck was being used.

▇ ▇ Apart from statutory regulations the law is this:

"It is undoubtedly true, as a general proposition of law, that the doctrine of *respondeat superior* applies only when the relation of master and servant is shown to exist between the wrongdoer and the person sought to be charged with the injury resulting from the wrong at the time and in respect of the very transaction out of which the injury arose, and the mere fact that the driver of the automobile was the defendants' servant will not make the defendant liable. It must be further shown that at the time of the accident the driver was on the master's business, and acting within the scope of his employment." *Goodman* v. *Wilson,* 129 Tenn., 464, 467, 166 S. W., 752, 753, 51 L. R. A. (N. S.), 1116.

The foregoing is expressly approved in *Core* v. *Resha,* 140 Tenn., 408, 204 S. W., 1149, and in *Keller* v. *Federal Bob Brannon Truck Co.,* 151 Tenn., 427, 269 S. W., 914,

Statutory regulation in this State is set forth in these sections of the Code:

2701. "In all actions for injury to persons and/or property caused by the negligent operation or use of any automobile, auto truck, motorcycle, or other motor propelled vehicle within this state, proof of ownership of such vehicle, shall be prima facie evidence that said vehicle at the time of the cause of action sued on was being operated and used with the authority, consent and knowledge of the owner in the very transaction out of which said injury or cause of action arose."

2702. "Proof of the registration of said motor propelled vehicle in the name of any person, shall be prima facie evidence of ownership of said motor propelled vehicle by the person in whose name said vehicle is registered; and such proof of registration shall likewise be prima facie evidence that said vehicle was then and there being operated by the owner or by the owner's servant for the owner's use and benefit and within the course and scope of his employment."

Section 2701 and section 2702 down to the semicolon were taken from chapter 162 of the Acts of 1921. That portion of section 2702 after the semicolon providing that proof of registration should be *prima facie* evidence that the vehicle was being operated by the owner or his servant for the owner's use and benefit and within the course and scope of his employment was taken from chapter 59 of the Acts of 1923.

By the Act of 1921, proof of ownership raised a presumption that the vehicle was being used with the owner's authority in the particular transaction, and proof of registration raised a presumption of ownership. This

legislation, however, did not relieve a plaintiff suing for injuries arising out of an automobile accident from showing that the vehicle was being used in the owner's business at the time of the accident. The Act of 1923 was passed to meet such a situation, but that Act only went to the extent of providing that proof of registration should be *prima facie* evidence that the vehicle was being operated by the owner or the owner's servant for the owner's use and benefit at the time of the accident.

■ These statutes do not make bare proof of ownership presumptive evidence that a vehicle involved in an accident was being used in the owner's business at such time. Proof of registration in the owner's name is necessary to create such presumption.

■■ There is no proof as to the registration of the truck with the canvas drop curtain in the rear that is supposed to have run down the administrator's intestate. At most, there is proof from which the ownership of that truck can be inferred. Proof of ownership, however, and proof that the particular use was by the owner's permission fall short of making out a case in which the owner is liable for the negligence of the operation of a particular vehicle. A familiar instance of this sort is a bailment—the bailor of an automobile not, save in exceptional circumstances, being liable for negligence of the bailee. *Vaughn* v. *Millington Motor Co.,* 160 Tenn., 197, 22 S. W. (2d), 226; *Rent-A-Car Co.* v. *Belford,* 163 Tenn., 590, 45 S. W. (2d), 49.

For the reasons stated, we must conclude that the administrator has failed to make out a case of liability against the defendant and the judgment of the Court of Appeals must be reversed and this suit dismissed.