Samuel HAMRICK and wife, Carol Hamrick, Brenda Gates, widow and next of kin of Carlos Gates, and William Hixson and wife, Vickie Hixson, Plaintiffs/Appellants,

v.

SPRING CITY MOTOR COMPANY, Defendant/Appellee.

Supreme Court of Tennessee, at Knoxville.

March 24, 1986.

384

Jerry H. Summers, Thomas L. Wyatt, Chattanooga, for plaintiffs/appellants.

N. Mark Kinsman, Thomas L.N. Knight, William H. Ortwein, Larry Roddy, Chattanooga, for defendant/appellee.

## OPINION

**HARBISON, Justice.**

These consolidated actions for personal injury and wrongful death arose out of a motor vehicle accident. They were brought against Luther Champion, operator of a new General Motors four-wheel drive truck, and against Spring City Motor Company, the owner of that vehicle. The accident happened late in the evening of July 10, 1979 when Champion apparently attempted to make a left turn in front of the approaching vehicle in which Messrs. Hamrick, Gates and Hixson were riding.

Following a jury trial judgments were entered against Champion. He is not a party to this appeal, nor are there presented any issues respecting the trial.

The complaint alleged three different theories of individual liability upon the dealership which was the owner of the new 1979 truck. Depositions were taken from Champion and from George W. Baker, Jr., one of the principals of the dealership. These were filed in support of a motion for summary judgment on behalf of Spring City Motor Company. That motion was sustained prior to trial, and the action of the trial court was affirmed by the Court of Appeals. We granted review to give further consideration to that aspect of the case.

The three theories asserted against Spring City Motor Company were (1) permissive use, (2) negligent entrustment and (3) *respondeat superior*, including the provisions of T.C.A. § 55–10–311 creating a prima facie case upon proof of ownership.

■ Permissive use, standing alone, establishes only a bailment. In and of itself it is not a basis for the imposition of personal liability upon the owner of a vehicle. When there is permissive use, there may be an issue concerning omnibus insurance coverage carried by the owner, but this is quite different from the imposition of personal liability upon the owner himself. It is well settled that ordinarily a bailor is not liable for negligence of a bailee. *See East Tennessee & Western North Carolina Mo-*

*tor Transport Company v. Brooks*, 173 Tenn. 542, 548, 121 S.W.2d 559, 561 (1938). Whether an individual is driving a vehicle as a permitee or as the owner, even though there has not yet been a formal transfer of title, can obviously affect questions of insurance coverage. *See Mercado v. The Travelers Insurance Co.*, 59 Tenn.App. 741, 443 S.W.2d 819 (1969). In that case an owner had executed an informal bill of sale to a person who was driving a vehicle at the time of a serious accident. There had not been compliance with the motor vehicle registration and title statutes, but nevertheless the driver was deemed to be operating the vehicle in his own right and not as a permitee or bailee of the owner, so that insurance carried by the latter was held not to cover the driver.

■ While the evidence in the present case established either a permissive use or an informal, incomplete sale, no basis has been shown for imposition of liability upon the owner simply because of the permission given to Champion to have the vehicle in his possession. Summary judgment was therefore properly granted upon that theory of appellants.

■ The second theory upon which appellants sought to hold the owner personally liable was that of negligent entrustment. Again, however, there is no evidentiary basis for imposition of liability upon that theory. Champion was 29 years of age, duly licensed, steadily employed, and was neither intoxicated nor otherwise impaired when the vehicle was delivered to him. He drove it from the dealer's place of business in Rockwood, Tennessee to another office of the dealership in Spring City without incident. He stated that he was pleased with the vehicle and wanted to purchase it. He and Mr. Bacon, together with Champion's father, entered into negotiations under which Champion's father donated an older vehicle registered in his name as the downpayment, and Champion was to obtain financing for the balance of the purchase price from a credit union. Champion and his father removed all of their personal

possessions from the vehicle being traded and delivered its keys to Mr. Bacon. One of Mr. Bacon's employees transferred the license plate from the traded vehicle to the new truck. It was understood that Champion was to confirm financing at his credit union, and Mr. Bacon testified that he supposed the remainder of the transaction would be handled by mail.

On the following day Champion did visit the credit union and testified that financing was confirmed. He did not have an executed bill of sale from Mr. Bacon in his possession, but simply an unsigned one setting out the terms of the purchase, showing the down-payment and the balance to be financed. Accordingly Champion would have had to contact Mr. Bacon or go back to the dealership to get an executed bill of sale and whatever other papers the credit union would have needed in order to complete the transaction and send a check to the seller.

Mr. Champion's father was well acquainted with Mr. Bacon and had purchased several automobiles at his dealership previously. Mr. Bacon did not know the son, but the evidence reveals nothing in the background of the son which would have been evidence of negligence in entrusting possession of a new vehicle to him. The evidence shows that he obtained a commitment for proper financing of the vehicle on the day after it was entrusted to him. That evening he drank a considerable amount of intoxicating beverages, and the accident occurred about 11:45 in the evening after he had taken his girl friend to her home and was returning to his father's residence. He was not shown, however, to be a chronic alcoholic, nor was he intoxicated at the time the vehicle was entrusted to him. There is no dispute as to any material facts concerning entrustment to him and no basis upon which a finding of negligence by the seller in that regard could be sustained. *See Kennedy v. Crumley,* 51 Tenn.App. 359, 367 S.W.2d 797 (1962). Accordingly summary judgment was properly granted to appellee upon that theory.

There is no claim of any defect in the vehicle delivered to Champion, so that the only remaining basis upon which liability could theoretically be imposed upon the dealership was that of *respondeat superior.* In order to impose liability under this theory, of course, it is necessary to show that the operator of a vehicle was acting as a servant or employee of the owner and in the course and scope of the employment at the time of the accident. To establish a prima facie case on this theory, appellants rely upon the terms and provisions of T.C.A. § 55–10–311:

*"Prima facie evidence of ownership of automobile and use in owner's business.*—In all actions for injury to persons and/or to property caused by the negligent operation or use of any automobile, auto truck, motorcycle, or other motor propelled vehicle within this state, proof of ownership of such vehicle, shall be prima facie evidence that said vehicle at the time of the cause of action sued on was being operated and used with authority, consent and knowledge of the owner in the very transaction out of which said injury or cause of action arose, and such proof of ownership likewise shall be prima facie evidence that said vehicle was then and there being operated by the owner, or by the owner's servant, for the owner's use and benefit and within the course and scope of his employment. The prima facie evidence rules of the preceding sentence shall also apply in cases of the negligent operation of a vehicle being test-driven by a prospective purchaser with the knowledge and consent of the seller or his agent whether or not the seller or his agent is present in the vehicle at the time of the alleged negligent operation. This section is in the nature of remedial legislation and it is the legislative intent that it be given a liberal construction."

The second sentence, making the prima facie evidence rules applicable to the test-driving of a vehicle by a prospective purchaser, was added by 1974 Tenn.Pub.Acts,

ch. 750 [1]. The predecessor of the remainder of the statute was enacted by 1921 Tenn.Pub. Acts, ch. 162, and the statute was subsequently amended by 1957 Tenn. Pub. Acts, ch. 123.

 The principal provisions of this section, other than the sentence pertaining to prospective purchasers, have been construed many times by the courts of this state. It is not necessary here to discuss all of these decisions. As presently written, the statute does not contain the word "presumption," although prior versions did so. Earlier cases construing the statute held that it created a "rebuttable presumption" of a master-servant relationship, sometimes referred to as an "agency," and that unless there was countervailing evidence introduced at trial, this prima facie evidence was sufficient to take the case to the jury and to support a jury verdict against the owner. *See Emert v. Wilkerson,* 7 Tenn.App. 269 (1928); *Racy Cream Company v. Walden,* 1 Tenn.App. 653 (1925). In the latter case it was stated that the purpose of the General Assembly in enacting the statute was:

"to create one or more new rules of evidence in these automobile cases under which mere proof of ownership of an automobile effecting an injury, being negligently operated, should establish a prima-facie case of liability against the car, or against the owner, and thus bring our State in line with those holding this to be a correct conclusion without the aid of the statute." 1 Tenn.App. at 667–668.

Essentially, the statute does provide a rule of evidence or a rule of procedure, by providing that proof of ownership is prima facie evidence of a master-servant relationship. This prima facie case is sufficient, in and of itself, to enable a plaintiff to overcome at trial a motion for a directed verdict at the end of the plaintiff's proof, unless, of course, conclusive rebutting evidence

has been established during the presentation of the plaintiff's case in chief. The prima facie case may or may not be sufficient to overcome a motion for directed verdict at the conclusion of all the evidence at trial, depending upon the rebutting evidence and upon the question of whether any issue of credibility of the rebutting witnesses has been developed. *See generally Haggard v. Jim Clayton Motors, Inc.* 216 Tenn. 625, 393 S.W.2d 292 (1965). As stated previously, the word "presumption" has been dropped from the present version of the statute, and we think properly so. Established is a prima facie case as to a master-servant relationship, and essentially the statute has the effect of placing the burden of proof upon the owner to overcome that case by evidence. If it is overcome by proof so strong that reasonable minds could not differ, a directed verdict for the owner may be proper; otherwise the issue is to be resolved by the jury. *See Sadler v. Draper,* 46 Tenn.App. 1, 20, 326 S.W.2d 148 (1959).

Because the statute itself creates initially a sufficient case of master-servant status upon proof of ownership, a serious question is presented as to whether or not this prima facie case can be overcome pre-trial by motion for summary judgment. We are aware that the Court of Appeals has held that it may be so overcome in the recent case of *Ferguson v. Tomerlin,* 656 S.W.2d 378 (Tenn.App.1983). There the Court of Appeals found that there was no evidence at the summary judgment proceeding to impeach the credibility of any of the witnesses and that the proof established beyond dispute that no master-servant relationship existed at the time of the accident. The Court said:

"In the final analysis, in order to hold it proper to allow this matter to proceed to trial, given the state of the record when disposal was had of the summary judgment motion, we would be constrained to

---

**1.** We have had the history of this legislation researched as far as possible. In the debates one legislator stated that the purpose of the provision was to ensure that the owner's insurance covered a prospective purchaser. Another

stated that it was designed to make clear that the seller or his agent did not have to be present in the vehicle at the time of an accident in order that the "presumption" arise.

rule that summary judgment would never be appropriate in a case involving this statutory presumption. Finding neither logic nor authority for this proposition, we are unwilling to do so." 656 S.W.2d at 383.

■ That case did not involve a prospective purchaser but only a private bailment. Although this Court denied review in that case, we are of the opinion that ordinarily the prima facie case established from proof of ownership is sufficient to overcome a motion for summary judgment as well as a motion for directed verdict at trial at the end of the plaintiff's proof. The statute and the rules developed thereunder actually pertain to a trial, not to a pre-trial disposition of a case. There is ample authority that the trial court may direct a verdict at the end of all of the evidence where the rebutting proof is so clear that reasonable minds could not differ and there is no question of credibility of the witnesses. *See e.g. Ford v. Reeder Chevrolet Company,* 663 S.W.2d 803 (Tenn.App.1983).

■ It has sometimes been stated in appellate opinions that if a motion for summary judgment is overruled, a jury question is presented. This is not strictly accurate. The overruling of a motion for summary judgment does not necessarily mean that the case will go to a jury at a trial, because the evidence adduced at trial may be significantly different from that contained in affidavits or depositions heard pre-trial on summary judgment proceedings. All that the overruling of a motion for summary judgment indicates is that the case should proceed further. *See Williamson County Broadcasting Co. v. Williamson County Bd. of Education,* 549 S.W.2d 371 (Tenn.1977). Whether it will ever go to a jury or whether it will be disposed of on directed verdict pursuant to Rule 50, T.R. C.P., depends upon the record developed at trial.

The trial judge who disposed of the summary judgment motion was aware of this problem. In colloquy with counsel he stated:

"... I don't want a future fact or future pleadings to crop up in the trial where it would appear that I was premature in ruling on the case. In a lot of these a judge is well within his bounds in granting a directed verdict where a motion for summary judgment is premature."

We are of the opinion that that is the situation in the present case. We express no opinion whatever upon the merits of the plaintiffs' claim, and by overruling the motion for summary judgment we do not wish to leave any implication that this case should or should not be submitted to a jury. In our opinion, however, summary judgment proceedings do not involve findings of fact or weighing of evidence. They were not designed to match statutory "prima facie" cases against rebutting proof or to determine whether a party has carried the requisite burden of proof. They are merely to dispose of legal questions upon undisputed facts.

In the present case proof of ownership is, by statute, "prima facie evidence" of a master-servant relationship. There is certainly countervailing evidence in the record. The deposition of Mr. Champion, however, is quite lengthy. It is possible to draw different inferences from it. It is not entirely clear whether Mr. Champion was still "test-driving" the automobile within the meaning of T.C.A. § 55–10–311, or whether he had so far finalized the purchase that he should be deemed the owner and no longer within the purview of the statute. As pointed out in *Mercado v. The Travelers Insurance Company, supra,* the sale of a vehicle may occur without the completion of the formalities required by the motor vehicle registration and title statutes.

As pointed out by appellants, there are also some discrepancies between the testimony of Champion and that of Mr. Bacon with respect to certain aspects of the transaction. Mr. Bacon did not understand that Mr. Champion had to go to Chattanooga for approval of his financing, nor did Mr. Bacon recall Mr. Champion's father expressing any reluctance about Champion

taking the truck before it had been titled in his name. These may or may not prove to be material ultimately, but at present appellants are entitled to the most favorable view of the evidence as well as having established a prima facie case by statute on the master-servant issue.

We recognize, as pointed out by the Court in *Hill v. Harrill*, 203 Tenn. 123, 310 S.W.2d 169 (1957), that without the 1974 amendment to the statute in question, a prospective purchaser ordinarily is not deemed to be on the business of a dealer. In that case, Justice Tomlinson wrote the following:

"It is an inescapable fact that the dealer lets a prospective purchaser demonstrate a car to himself pursuant to an effort upon the part of the dealer to sell this car to that prospect. There is, therefore, no logical way, as the writer of this opinion views it, to escape the conclusion that such demonstration of the car is in direct furtherance of the business of the dealer, and is in operation *(sic)* being made by one designated by the dealer to operate the car in furtherance of that business, to-wit, the business of selling it. However, the authority to the contrary is so overwhelming and unanimous as to convince this writer that his personal view of the matter must be erroneous. This Court's opinion is that such operation of the car by a prospective purchaser, the dealer or one of its employees consenting, but not being present, is an operation by one for whose negligence the dealer is not liable, unless made so in this state by Code Section 59–414.²" 203 Tenn. at 131, 310 S.W.2d at 172.

The Court found that that particular statute did not impose liability under the circumstances of that case. It reversed a jury verdict against the dealer and entered a directed verdict in its favor. The Court in that case was not dealing with the same statute as that involved here, however, and the decision was before the 1974 amend-

ment extending the prima facie evidence rules to prospective purchasers.

Although we express no opinion whatever as to whether this case ultimately can be developed into one submissible to a jury, we are of the opinion that it was premature for the trial judge to grant summary judgment before trial and without all of the parties having an opportunity fully to develop their proof and rest their cases. Summary judgments pre-trial and directed verdicts at trial, while similar in some respects, are not identical. The one depends upon a partial record developed through depositions or affidavits; the other after an evidentiary record developed as fully as the parties see fit. The statutes in question, as previously stated, were primarily designed to deal with trial practice and procedure, and not with summary judgment.

■ We do not find it necessary expressly to overrule *Ferguson v. Tomerlin*, 656 S.W.2d 378 (Tenn.App.1983), because there are many types of cases that arise under the statutes involved here. There may be some instances where summary disposition could be warranted. However, we are of the opinion that summary judgment is not ordinarily the proper procedure for determining whether a prima facie case has or has not been overcome by countervailing evidence.

In the present case we are of the opinion that the issues should be developed at trial, and at the appropriate time the trial judge can determine whether or not any submissible issue exists with respect to a master-servant relationship between Champion and appellee. The judgment of the Courts below is reversed solely with respect to that issue, and the cause is remanded to the trial court for further proceedings. Costs incident to the appeal will be taxed one-half to appellants and one-half to appellee.

BROCK, C.J., FONES and COOPER, JJ., and BYERS, Special Justice, concur.

---

**2.** Now T.C.A. § 55–4–204. This statute deals with the operation of vehicles equipped with dealers' license plates.