# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
March 10, 2010 Session

## ROBERT STRINE, ET AL. v. JOSHUA WALTON, ET AL.

**Appeal from the Circuit Court for Jefferson County**
**Nos. 20,672-III, 20,908-II      Rex Henry Ogle, Judge**

---

**No. E2009-00431-COA-R3-CV - FILED APRIL 15, 2010**

---

On July 7, 2005, Ashley Strine ("Plaintiff") was injured while riding in a vehicle being driven by Joshua Walton ("Walton"). The vehicle was owned by James Rice ("Father"), who had given the vehicle to his son, Kevin Rice ("Son"), for Son's personal use. On the day of the accident, Son had given Walton permission to use his vehicle to pick up Plaintiff. Walton and Plaintiff were planning on attending a birthday party later that day. Plaintiff originally sued only Walton and Father. As to Father, Plaintiff asserted liability based on the family purpose doctrine and negligent entrustment. Over two years later, Son was added as a defendant. An order of compromise and dismissal was entered as to Walton. Thereafter, Father and Son filed a joint motion for summary judgment. The Trial Court granted Father summary judgment on Plaintiff's claims pursuant to the family purpose doctrine and negligent entrustment. With regard to Son, the Trial Court concluded that all claims against him were barred by the one-year statute of limitations. Plaintiff appeals. We affirm the judgment of the Trial Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of**
**the Circuit Court Affirmed; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

Dan C. Stanley and Travis E. Venable, Knoxville, Tennessee, for the Appellants, Robert and Grace Strine, individually and as guardian and next friend of Ashley Strine, a minor.

Jon M. Cope and Hudson T. Ellis, Knoxville, Tennessee, for the Appellees James Rice and Kevin Rice.

# OPINION

## Background

In this car wreck lawsuit, Plaintiff's complaint was filed on January 30, 2006, and alleges that on July 7, 2005, Plaintiff[1] was a passenger in a vehicle being driven by Walton. Plaintiff claimed that Walton "failed to stop at a stop sign and failed to yield to the right of way of another vehicle being driven by Joseph Clabo, causing [Plaintiff] serious and life-threatening injuries." Plaintiff alleged that Walton was both negligent and negligent *per se*. Plaintiff also sued Father, the owner of the vehicle being driven by Walton. Plaintiff alleged as to Father:

> At the time of the collision, defendant Joshua Walton was driving a vehicle owned or co-owned by and registered to [Father] and was operating said vehicle with the permission of [Father]; his negligence is therefore imputed to [Father] by virtue of the doctrine of *respondeat superior* and T.C.A. § 55-10-311: *Prima facie evidence of ownership of automobile and use in owner's business* and T.C.A. § 55-10-312: *Registration prima facie evidence of ownership and that operation was for owner's benefit*, and the family purpose doctrine. (Emphasis in original).

On April 7, 2006, Walton answered the complaint and admitted that he was involved in an automobile accident and that Plaintiff was a passenger in the vehicle. Walton admitted that the vehicle was owned by and registered to Father. Walton expressly averred, however, that he was operating the vehicle with the permission of Son. Walton generally denied being negligent and further denied any liability to Plaintiff.

In July of 2006, Plaintiff amended her complaint to sue Alta Hart and Frank and Twylia Preston d/b/a Hillcrest Orchard, claiming that a sign owned by the Prestons and located on land owned by Hart contributed to the accident because the sign was placed in such a way as to create a defective or unreasonably dangerous condition. These three new defendants were voluntarily dismissed in December of 2007. Even though Son was expressly identified in Walton's April 2006 answer as the person who gave Walton permission to drive

---

[1] The complaint was filed by Ashley Strine's parents, individually and on behalf of their daughter, who was a minor at the time of the accident. For ease of reference only, we will refer to Ashley Strine singularly as "Plaintiff".

the vehicle, Plaintiff did not attempt to add Son as a defendant when she amended her complaint in July 2006.

Father answered the amended complaint on September 20, 2006. In his answer, Father admitted that he was the owner of the vehicle being driven by Walton on the day of the accident, and that the vehicle was registered in his name. Father, however, asserted that "defendant Walton was operating the vehicle without the express or implied permission of [Father]." Father denied the remaining pertinent allegations contained within the complaint and denied any liability to Plaintiff.

In June of 2008, Plaintiff again sought to amend the complaint. This time, Plaintiff sought to add Son as a defendant. Specifically, Plaintiff asserted that she sought to "amend [her] Complaint to add defendant Kevin Rice . . . under the doctrine of negligence and negligent entrustment." On July 9, 2008, the Trial Court allowed the complaint to be amended even though it was amended: (1) three years after the accident occurred; (2) over two years and four months after the original complaint was filed; and (3) two years and two months after Son initially was identified as the person who gave Walton permission to drive the vehicle.

On July 21, 2008, an Order of Compromise and Dismissal was entered as to defendant Walton, and he was dismissed from the case. This lawsuit proceeded against Father and Son.

In September 2008, Father and Son filed a joint motion for summary judgment. Father and Son claimed that, based on the undisputed material facts, the family purpose doctrine and the doctrine of negligent entrustment did not apply in this case. They further alleged that the undisputed material facts established that they could not be held liable for Walton's negligence. Finally, Son claimed that the statute of limitations had run against him. Son also claimed that the discovery rule was inapplicable and, therefore, could not toll the running of the statute of limitations as to him. Plaintiff, of course, opposed the motion for summary judgment. Several depositions were filed in support of and in opposition to the motion for summary judgment. These depositions were of Plaintiff, Walton, Father, and Son, and we will discuss the pertinent portions of these depositions.

Walton testified in his deposition that he was eighteen years old at the time of the accident and had been licensed to drive for one year. Walton testified that he was involved in another automobile accident about six months before the accident giving rise to this lawsuit. When asked to describe the previous accident, Walton explained that he "was going around a turn and a truck had hit the back end of me, spun me around, and went into a driveway." Walton added that this accident was "blamed" on him. Walton acknowledged

that Son was aware of this previous accident. Prior to the accident in question, Walton had "a couple" of speeding tickets and a ticket for "failure to use a blinker." He also was cited for illegal window tinting and non-working taillights. Since the accident in July 2005, Walton has been involved in another accident. When describing this new accident, Walton stated it was raining "real bad" and his brakes locked up and he rear-ended a car that was in front of him.

On the day of the accident, Walton owned a vehicle but it was not in working condition. Walton explained that he and Son were staying temporarily with a friend, Louis Lara, while Mr. Lara's father was out of town. Walton and Son had been friends for a year and a half and went to school together. Walton never met Father before the accident. The vehicle Son had been driving was a 1995 Nissan Altima. Prior to the accident, Walton had never driven Son's vehicle.

When asked about the accident, Walton testified that he and Plaintiff were intending to go to a birthday party at Alladin's Castle located at East Town Mall in Knoxville. The day before the party, Walton asked Son if he could borrow his car the following day to go pick up Plaintiff. Son was not going to be using his car at that particular time because he would be at work with Mr. Lara, and they were going to ride to work together. Walton explained that since Son was not going to be using his vehicle, Son agreed to let Walton use the car and gave him the car keys. Walton intended to pick Plaintiff up the next day and return to Lara's residence with Plaintiff. Thereafter, Son was going to take Walton and Plaintiff to Alladin's Castle to attend a birthday party for one of Plaintiff's friends. After dropping Walton and Plaintiff off at the mall, Son was going to return to Lara's residence. In other words, Son was not going to stay at the mall with Walton and Plaintiff.

On the day of the accident, Walton called Plaintiff and told her he was on his way to pick her up. Walton then left in Son's car to go get Plaintiff. While Walton remembers picking up Plaintiff and driving with her in the car, he has no memory at all of the accident or how the accident took place. Walton testified that even though he always stopped at the stop sign where the accident occurred, he has no memory of whether he actually stopped at the stop sign on the day of the accident.

Son never told Walton that he (i.e., Son) did not have permission to let anyone else drive the Altima. Other than the day of the accident, Walton has never driven a car owned or being used by Son. However, according to Walton, Son had allowed Mr. Lara to borrow his car several times. Walton stated that after the accident, Son told him that he was not supposed to let anyone drive the car. Walton responded, "Well, it's a little late for that,

isn't it, now?" Walton stated that his trip to get Plaintiff was purely for his personal benefit. Neither Father nor Son received any benefit from Walton's use of the Altima.

Plaintiff testified that at the time of the accident, she was seventeen years old. Plaintiff does not remember much about the day of the accident. Obviously, she and Walton had made plans, and she remembers speaking to Walton on the telephone. Plaintiff did not know where Walton had come from prior to picking her up, and she did not recognize the car he was driving. She remembers Walton being at her front door, but does not remember anything after that. She has vague memories of being in the hospital. Plaintiff has no memory at all of how the accident happened. Plaintiff was told that Walton ran a stop sign and they were "t-boned" by another car. Plaintiff does not recall who told her this.

Plaintiff never met Father or Son before the depositions taken in this case. Although Plaintiff and Walton had dated a few times, they were not going on a date on the day of the accident. When asked if Walton was running an errand or going somewhere for the benefit of anyone else on the day of the accident, Plaintiff responded "[n]ot that I'm aware of." When asked if Walton was working or delivering anything at the time of the accident, Plaintiff responded "[n]ot that I'm aware of." Plaintiff stated that she had no personal knowledge as to whether Walton had permission to use the car he was driving at the time of the accident. Plaintiff stated that based on the accident report, she is aware that Walton was not the owner of the car that he was driving.

Plaintiff testified that "sometimes" she was nervous about Walton's driving capabilities because he would fool around or drive too fast. However, on the day of the accident she obviously felt safe enough to get into the car with Walton driving. Plaintiff is not aware if Walton has any sort of a reputation with respect to his driving abilities.

Son's deposition was filed with the Trial Court. Son currently drives a 2000 Mercury Mountaineer which he owns. Prior to that, Son drove a 1994 Ford Ranger which was given to him by Father and which was titled in Son's name. Son did not let anyone drive the Ranger. Prior to the Ranger, Father had given Son a Toyota pickup truck and a Jeep Cherokee. Both of these cars were titled in Son's name but were given to Son by Father.

Son acknowledged that Father owned the Altima that Walton was driving at the time of the accident. Son initially testified that he had no memory of any conversations he had with Father about the Altima after it was purchased. Son later testified that there were several occasions where Father told him not to let anyone else drive the Altima. Son had been driving the Altima for approximately a year and a half when the accident occurred. Son denied letting Louis Lara drive his vehicle. The Altima was registered in Father's name, and Father gave Son permission to drive the vehicle. Son stated that other than his mother, no

one else was supposed to drive the Altima. Son's mother had driven the Altima once or twice.

Son described Walton as a "crazy" driver. Son rode with him once or twice, and Walton was "always wanting to speed and stuff." Son stated that he was "worried" when he let Walton borrow his car because the car was unreliable. The only time Son loaned his car to someone other than his mother was when Walton borrowed the car and wrecked it. On the day of the accident, both Son and Walton were staying with Louis Lara. Walton's car was not running and needed a new clutch. Son initially testified that he did not tell anyone that the Altima was Father's car and that he was not allowed to let anyone else drive the Altima. Son later testified that both Walton and Lara knew that he was not supposed to let anyone drive the Altima. Son then testified that he was not sure who he told that no one was allowed to drive the Altima, but he was sure he had told at least one person.

According to Son, on the day of the accident he and Lara had carpooled to work together. They got back to Lara's residence about 3:00 p.m. and learned that Walton had been in a wreck and was in the hospital. Son acknowledged that he told Walton he could borrow his car. Son did not ask Father for permission to let Walton borrow the car. Son stated that he should have asked Father for permission to let Walton drive the car. When asked if he thought Father would have allowed Walton to drive the car, Son stated "no."

Son let Walton borrow his car so Walton could go get Plaintiff, whom Son had never met. Son told Walton to have the car back at Lara's residence by the time Son returned from work. After the accident, Father "reprimanded" Son several times over the fact that he was not supposed to let anyone else drive the vehicle. After the Altima was wrecked, Father gave Son a Jeep Cherokee. Father signed the Jeep Cherokee over to Son. The Altima was the only car where Father put any restrictions on Son's use. Son never met Plaintiff prior to the accident and met her for the first time at his deposition.

Father also was deposed. Father testified that he has never met Walton. Father acknowledged that he was the registered owner of the Altima that Walton was driving on the day of the accident. Father occasionally drove the Altima, but that car primarily was for Son's use. Father paid for the car insurance on the Altima and paid extra for Son to be covered. Even though Son had full use of the vehicle on the day of the accident, Father had told Son not to let anyone else drive that vehicle. If Father had known that Son had let someone drive the Altima, he would have taken the car away from Son. When asked if he talked to Son about the accident, Father stated that Son told him that Walton had asked to borrow the car when Son was "half asleep" and that Son said he could.

-6-

In February of 2009, the Trial Court granted the joint motion for summary judgment. According to the Trial Court:

1.      The defendant, James Rice, has negated an essential element of the plaintiffs' claims by showing that based on the undisputed material facts of this case that the defendant, James Rice, did not owe any duty to the plaintiffs and further, that the defendant, James Rice, cannot be vicariously liable as a matter of law to any of the plaintiffs under any applicable legal doctrine and/or law.

2.      The burden shifted to the plaintiffs to show that there was a genuine issue of material fact in dispute regarding defendant, James Rice.

3.      Plaintiffs have failed to show that there is a genuine issue of material fact as to whether the defendant, James Rice, owed any duty to the plaintiffs, and/or was vicariously liable under any applicable doctrine and/or law.

4.      The defendant, James Rice, is entitled to Summary Judgment as a matter of law.

5.      Defendant, Kevin Rice, has asserted and put forth in the record sufficient proof to establish an affirmative defense regarding the one-year statute of limitations for personal injuries. Tenn. Code Ann. § 28-3-104. As such, the defendant, Kevin Rice, is entitled to Summary Judgment as a matter of law regarding all of the plaintiffs' claims against him, as said claims are barred by the applicable one year statute of limitations for personal injuries in the State of Tennessee.

Plaintiff appeals raising the following issues, which we take verbatim from her brief:

I.      Did the Trial Court err in holding as a matter of law that James Rice could not be held liable for Plaintiff's injuries pursuant to T.C.A. § 55-10-311?

II.     Did the Trial Court err in holding as a matter of law that James Rice could not be held liable for Plaintiff's injuries pursuant to the Family Purpose Doctrine?

III.    Did the Trial Court err in holding as a matter of law that James Rice could not be vicariously liable for the actions of his son, Kevin Rice, who negligently loaned the Rice vehicle to an incompetent driver, who caused injuries to Plaintiff?

IV.     Did the Trial Court err in holding that [the] discovery rule did not apply to Kevin Rice, and that any cause of action against Kevin Rice is barred by the one-year statute of limitations pursuant to T.C.A. § 28-3-104?

## **Discussion**

Our Supreme Court reiterated the standard of review in summary judgment cases as follows:

> The scope of review of a grant of summary judgment is well established.  Because our inquiry involves a question of law, no presumption of correctness attaches to the judgment, and our task is to review the record to determine whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied.  *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cowden v. Sovran Bank/Cent. S.*, 816 S.W.2d 741, 744 (Tenn. 1991).

> A summary judgment may be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Tenn. R. Civ. P. 56.04; *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993).  The party seeking the summary judgment has the ultimate burden of persuasion "that there are no disputed, material facts creating a genuine issue for trial . . . and that he is entitled to judgment as a matter of law."  *Id*. at 215.  If that motion is properly supported, the burden to establish a genuine issue of material fact shifts to the non-moving party.  In order to shift the burden, the movant must either  affirmatively  negate  an  essential  element  of  the

nonmovant's claim or demonstrate that the nonmoving party cannot establish an essential element of his case. *Id*. at 215 n.5; *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8-9 (Tenn. 2008). "[C]onclusory assertion[s]" are not sufficient to shift the burden to the non-moving party. *Byrd*, 847 S.W.2d at 215; *see also Blanchard v. Kellum*, 975 S.W.2d 522, 525 (Tenn. 1998). Our state does not apply the federal standard for summary judgment. The standard established in *McCarley v. West Quality Food Service*, 960 S.W.2d 585, 588 (Tenn. 1998), sets out, in the words of one authority, "a reasonable, predictable summary judgment jurisprudence for our state." Judy M. Cornett, *The Legacy of Byrd v. Hall: Gossiping About Summary Judgment in Tennessee*, 69 Tenn. L. Rev. 175, 220 (2001).

Courts must view the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997). A grant of summary judgment is appropriate only when the facts and the reasonable inferences from those facts would permit a reasonable person to reach only one conclusion. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000). In making that assessment, this Court must discard all countervailing evidence. *Byrd*, 847 S.W.2d at 210-11. Recently, this Court confirmed these principles in *Hannan*.

*Giggers v. Memphis Housing Authority*, 277 S.W.3d 359, 363-64 (Tenn. 2009).

Plaintiff's first issue is her claim that the Trial Court erred "in holding as a matter of law that James Rice could not be held liable for Plaintiff's injuries pursuant to T.C.A. § 55-10-311." In relevant part, Tenn. Code Ann. § 55-10-311 provides as follows:

In all actions for injury to persons and/or to property caused by the negligent operation or use of any automobile, auto truck, motorcycle, or other motor propelled vehicle within this state, proof of ownership of the vehicle shall be prima facie evidence that the vehicle at the time of the cause of action sued on was being operated and used with authority, consent and knowledge of the owner in the very transaction out of which the injury or cause of action arose, and the proof of ownership likewise shall be prima facie evidence that the vehicle was then and there

being operated by the owner, or by the owner's servant, for the owner's use and benefit and within the course and scope of the servant's employment. . . .

Tenn. Code Ann. § 55-10-311 (2008).

In *Godfrey v. Ruiz*, 90 S.W.3d 692 (Tenn. 2002), our Supreme Court gave an in-depth discussion of the application of Tenn. Code Ann. § 55-10-311, stating as follows:

> This case turns on the application of Tennessee Code Annotated section 55-10-311(a) (1998)[2] . . . . The plaintiffs rely exclusively on this statute to establish that the van that struck their vehicle was operated with the defendants' knowledge and consent and that it was operated for the defendants' use and benefit and within the course and scope of the driver's employment. The defendants argue that their undisputed testimony establishes that there was no agency relationship. That testimony, they assert, is sufficient to overcome the prima facie evidence of agency that the statute creates.
>
> In *Hamrick v. Spring City Motor Co.*, this Court observed that Tennessee Code Annotated section 55-10-311 does not contain the word "presumption," although prior versions of the statute did. 708 S.W.2d 383, 387 (Tenn. 1986). We concluded that as a consequence of this legislative change "a serious question is presented as to whether or not [a] prima facie case can be overcome pre-trial by motion for summary judgment." *Id*. In *Warren v. Estate of Kirk*, this Court's most recent case construing Tennessee Code Annotated section 55-10-311(a), we reiterated that "[s]ummary judgment is not ordinarily the proper procedure for determining whether a prima facie case has or has not been overcome by countervailing evidence." 954 S.W.2d 722, 724 (Tenn. 1997) (quoting *Hamrick*, 708 S.W.2d at 388). In both *Hamrick* and *Warren*, we reversed the grant of summary judgment in favor of the defendant. In this case, too, summary judgment is unwarranted.

---

[2] For purposes of this appeal, the current version of Tenn. Code Ann. § 55-10-311 (2008) remains essentially unchanged from the version at issue in *Godfrey*.

Tennessee Code Annotated section 55-10-311 is clearly intended to eliminate the difficulty encountered by injured parties who are trying to prove that the driver was operating with the owner's permission at the time of the accident. *See Racy Cream Co. v. Walden*, 1 Tenn. App. 653, 668 (1925) (holding that an earlier version of the statute, enacted by Chapter 162 of the Public Acts of 1921, was intended to ease the difficulty of proving an agency relationship between a vehicle's driver and its owner). We decline to permit parties to overcome the statutorily created prima facie evidence of an owner-driver agency relationship by simply asserting that no consent was ever given. Such a construction would defeat the legislative intent that Tennessee Code Annotated section 55-10-311 be liberally construed.

The plaintiffs in this case are entitled to rely solely on the owner-driver agency relationship created by Tennessee Code Annotated section 55-10-311(a) to overcome the defendants' motion for summary judgment. Although the defendants offer uncontroverted testimony in support of their motion for summary judgment, their status as interested witnesses places their credibility in question. The defendants' uncorroborated testimony that Mr. Corpus was not a permissive user simply fails to rebut the prima facie evidence established by statute. Therefore, their motion for summary judgment was improperly granted.

There may be rare cases involving the application of Tennessee Code Annotated section 55-10-311 in which summary judgment is appropriate. As we noted in *Hamrick*, "[there may be some instances where summary disposition could be warranted." 708 S.W.2d at 389. Thus, we do not hold that proof of ownership is always sufficient to overcome summary judgment, regardless of the facts presented by the defendants. . . . We preserve the possibility that courts may grant summary judgment or a directed verdict on behalf of a vehicle's owner in a negligence case if the owner has provided evidence other than his own testimony that the driver was not acting as the owner's agent when the accident occurred. . . .

We hold that an owner's testimony negating the issue of agency, standing alone, cannot overcome the statutorily created prima facie evidence of an owner-driver agency relationship created by Tennessee Code Annotated section 55-10-311(a). Therefore, the lower courts erred in granting the defendants' motion for summary . . . .

*Godfrey*, 90 S.W.3d at 695-96.

We agree with Plaintiff that Father's evidence was insufficient to overcome the prima facie evidence established by Tenn. Code Ann. § 55-10-311. The first part of this statute creates prima facie evidence that the vehicle was being operated with the authority, consent, and knowledge of the owner, i.e., Father.[3] The only evidence that Walton in fact was not operating the vehicle with Father's authority, knowledge, or consent comes from the testimony of Father and Son, both of whom are interested witnesses. Walton testified that Son never told him that he was not allowed to drive the vehicle. This is not the same as affirmatively testifying that he drove the vehicle without Father's consent. Because the only proof addressing whether Walton actually was operating the vehicle with Father's consent comes from Father and Son, two very interested witnesses, we conclude that Father's evidence was insufficient to overcome the prima facie evidence created by the statute that Walton was operating the vehicle with Father's authority, knowledge, and consent.

Although the statute creates prima facie evidence that Walton was operating the vehicle with the authority, knowledge, and consent of Father, this does not automatically mean that Father is liable for Walton's actions. Tenn. Code Ann. § 55-10-311 does not create any cause of action but rather establishes certain prima facie evidence. "Permissive use, standing alone, establishes only a bailment. In and of itself it is not a basis for the imposition of personal liability upon the owner of a vehicle." *Hamrick v. Spring City Motor Co.*, 708 S.W.2d 383, 385 (Tenn. 1986). To hold otherwise would create strict liability for a vehicle owner anytime someone was allowed to drive his or her vehicle, which is not the

---

[3] The first part of the statute establishes prima facie evidence of knowledge and consent on the part of the owner. The second part of the statute establishes prima facie evidence of an agency relationship when the vehicle is being operated by the owner's servant/employee. Both parts of the statute were at issue in *Godfrey* and the Supreme Court held that the owner had failed to negate the prima facie evidence of an agency relationship. The present case does not involve a servant/employment situation, and thus there is no statutorily created prima facie agency relationship.

-12-

law in Tennessee; hence the law addressing agency relationships, the family purpose doctrine, and the tort of negligent entrustment, etc.[4]

This leads us to Plaintiff's next issue, which is her claim that the Trial Court erred when it granted Father summary judgment on her claim pursuant to the family purpose doctrine. In *Camper v. Minor*, 915 S.W.2d 437 (Tenn. 1996), our Supreme Court stated:

> The family purpose doctrine has been in effect in Tennessee for nearly eighty years, *King v. Smythe*, 140 Tenn. 217, 204 S.W. 296 (1918), and according to at least one court, has been "firmly established in this state." *Stephens v. Jones*, 710 S.W.2d 38, 42 (Tenn. App. 1984). Under the doctrine, the head of a household who maintains a motor vehicle for the general use and convenience of the family is liable for the negligence of any member of the family driving the vehicle, provided the driver received express or implied consent.
>
> The family purpose doctrine is applicable when two requirements have been satisfied. First, the head of the household must maintain an automobile for the purpose of providing pleasure or comfort for his or her family. *Scates v. Sandefer*, 163 Tenn. 558, 44 S.W.2d 310 (1931). Second, the family purpose driver must have been using the motor vehicle at the time of the injury "*in furtherance of that purpose* with the permission, either expressed or implied, of the owner." *Redding*, 230 S.W.2d at 205. *See also Stephens v. Jones*, 710 S.W.2d 38 (Tenn. App. 1984); *Long v. Tomlin*, 22 Tenn. App. 607, 125 S.W.2d 171 (1938) (emphasis added).

*Camper*, 915 S.W.2d at 447. As noted by this Court in *Gray v. Mitsky*, 280 S.W.3d 828 (Tenn. Ct. App. 2008), the "true test is whether the driver *was engaged in the owner's business at the time of the accident*, with business here meaning the furnishing of pleasure to the owner's family." *Id*. at 831 (quoting *Thurmon v. Sellers*, 62 S.W.3d 145, 156 (Tenn. Ct. App. 2001)) (emphasis added).

---

[4] If an owner of a vehicle were liable simply because they allowed someone to use their car, then we would be imposing strict liability and there would be no need whatsoever for the family purpose doctrine or the tort of negligent entrustment.

Based on the depositions of Plaintiff, Walton, Father, and Son, there simply is no genuine issue as to whether Walton was operating the vehicle for the purpose of furnishing "pleasure to the owner's family." *Id*. The undisputed material facts show that Walton was operating the vehicle purely for the benefit of himself and Plaintiff. In short, Walton was picking up Plaintiff so he and Plaintiff later could attend a birthday party of one of Plaintiff's friends. Plaintiff had never even met Father or Son. Neither Father nor Son obtained any benefit whatsoever by Walton's use of the vehicle. Likewise, the undisputed material facts demonstrate that Walton was not acting as an agent for Father or Son at the time of the accident. Walton's and Plaintiff's testimony mandates this finding. We conclude that the Trial Court correctly granted summary judgment to Father on Plaintiff's claim brought pursuant to the family purpose doctrine.

Plaintiff's next issue is her claim that the Trial Court erred when it held that Father "could not be vicariously liable for the actions of [Son], who negligently loaned the Rice vehicle to an incompetent driver, who caused injuries to Plaintiff." The fatal problem with this argument is that Plaintiff never argued to the Trial Court that Father should be held vicariously liable for Son's negligent entrustment of the vehicle to Walton. Plaintiff argued below that Father was directly liable for negligently entrusting the vehicle to Son, and that Son was directly liable for negligently entrusting the vehicle to Walton. We, however, have reviewed the complaint, the amended complaints, as well as Plaintiff's response to Defendants' motion for summary judgment, and Plaintiff never alleged or argued that Father could be held vicariously liable for Son's negligent entrustment of the vehicle to Walton, an altogether separate theory from what Plaintiff alleged in the pleadings.

There is nothing in the Trial Court's final judgment indicating that this argument was made to or rejected by the Trial Court.[5] We cannot conclude that the Trial Court committed error when ruling on an issue if there is nothing in the record establishing that the issue actually was raised below. It is well-settled that an issue not raised in the trial court cannot be raised for the first time on appeal. *See Barnes v. Barnes*, 193 S.W.3d 495, 501 (Tenn. 2006) ("Issues not raised in the trial court cannot be raised for the first time on appeal.").

We next discuss whether the Trial Court correctly granted summary judgment to Father on Plaintiff's claim of negligent entrustment for Father's entrusting the vehicle to Son. In *Watrous v. Johnson*, No. W2007-00814-COA-R3-CV, 2007 WL 4146289 (Tenn. Ct. App. Nov. 21, 2007), *no appl. perm. appeal filed*, this Court stated:

---

[5] The order granting summary judgment indicates that a hearing was held on January 12, 2009. We have not been provided a transcript of that hearing on appeal.

-14-

Tennessee recognizes the tort of negligent entrustment as defined in the Restatement (Second) of Torts. *West v. East Tenn. Pioneer Oil Co. d/b/a Exxon Convenience Store*, 172 S.W.3d 545, 554 (Tenn. 2005) (citations omitted). Section 390 of the Restatement provides:

> One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, *to use it* in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered *by its use*, is subject to liability for physical harm resulting to them.

Restatement (Second) of Torts § 390 (1965). . . . Thus, to succeed on a claim of negligent entrustment, a plaintiff must demonstrate that "a chattel was entrusted to one incompetent to *use it* with knowledge of the incompetence, and that *its use* was the proximate cause of injury or damage to another." *West* [*v. East Tennessee Pioneer Oil Co.*, 172 S.W.3d 545, 554 (Tenn. 2005)]. . . .

*Watrous*, 2007 WL 4146289, at *2, 3 (emphasis added).

We hold that the Trial Court correctly granted summary judgment to Father on Plaintiff's claim that Father had negligently entrusted the vehicle to Son. The reason for this is simple: Son was not driving the vehicle at the time of the accident. Thus, even assuming (without deciding) that one and a half years before the accident, Father negligently entrusted the vehicle to Son, Plaintiff cannot satisfy the second element of her claim, i.e., that the vehicle's use by the person to whom the vehicle was negligently entrusted was the proximate cause of the injuries. In short, Son was not using the vehicle at the time of the accident.

In reaching this conclusion, we emphasize two things. First, even though we conclude that Plaintiff's negligent entrustment claim against Father properly was dismissed, this does not mean that Father, as owner of the vehicle, could not have been held vicariously liable under agency principles for Son negligently entrusting the vehicle to Walton. As stated previously, however, such a claim never was alleged in the Trial Court by Plaintiff.

-15-

Second, our conclusion as to Father does not affect whether Son could be held liable for negligently entrusting the vehicle to Walton. This leads us to Plaintiff's final issue, which is whether the Trial Court correctly determined that the statute of limitations against Son had run by the time the complaint was amended for the second time.

The parties are in agreement that Plaintiff's personal injury claim against Son has a one-year statute of limitations. *See* Tenn. Code Ann. § 28-3-104(a)(1) (2000). On appeal, Plaintiff argues that the statute of limitations against Son was tolled because Plaintiff did not discover that it was Son who had loaned the vehicle to Walton until after the one year statute of limitations had run. In short, Plaintiff relies on the discovery rule to extend the running of the statute of limitations.

This Court discussed the discovery rule in *Grindstaff v. Bowman*, No. E2007-00135-COA-R3-CV, 2008 WL 2219274 (Tenn. Ct. App. May 29, 2008), *no appl. perm. appeal filed*, as follows:

> [T]he statute of limitations for personal injury actions is one year from the accrual of the cause of action. Tenn. Code Ann. § 28-3-104(a)(1). "When the cause of action accrues is determined by applying the discovery rule." *John Kohl & Co. P.C. v. Dearborn & Ewing*, 977 S.W.2d 528, 532 (Tenn. 1998). The discovery rule recognizes the "Hornbook principle that a cause of action in tort does not exist until a judicial remedy is available to the plaintiff; [and] that before a judicial remedy exists, two elements must coalesce, (1) a breach of some legally recognized duty owed by the defendant to the plaintiff; (2) that causes the plaintiff some legally cognizable damage." *Foster v. Harris*, 633 S.W.2d 304, 305 (Tenn. 1982). Thus, the statute of limitations will not run against a plaintiff "until he discovered, or reasonably should have discovered, (1) the occasion, the manner and means by which a breach of duty occurred that produced his injury; and (2) *the identity of the defendant who breached the duty*." *Id*. . . .

*Grindstaff*, 2008 WL 2219274, at *5 (emphasis in the original).

In *Grindstaff*, we also recognized that a plaintiff has a duty to act with reasonable diligence to ascertain the identity of a defendant. We stated:

Moreover, the plaintiffs cannot simply wait for information regarding a potential defendant to come to them. They have a duty to investigate and discover pertinent facts "through the exercise of reasonable care and due diligence." *Calaway ex rel. Calaway v. Schucker*, 193 S.W.3d 509, 520 (Tenn. 2005). If their lack of knowledge was due to a lack of due diligence, they will not be allowed to plead ignorance and effectively extend the statute of limitations, by way of the discovery rule, simply because they later discovered "new" information that they "reasonably should have discovered" much earlier.

*Id.*, at *6.

We note that in her brief on appeal, Plaintiff does not state exactly when she initially "discovered" that is was Son who potentially was liable for her personal injuries. Nevertheless, we know that the accident occurred on July 7, 2005. The original complaint which alleged, among other things, negligence and negligent entrustment by Father was filed on January 30, 2006. Walton filed his answer on April 7, 2006. The complaint was amended to add Son as a defendant on June 9, 2008.

In Walton's answer filed on April 7, 2006, Walton expressly identified Son as the person who loaned him the car. More specifically, Walton stated: (1) that he was operating the vehicle with the permission of Son, referred to in the answer as "Kevin Rice"; and (2) that the vehicle was owned by Father, referred to in the answer as "James Rice." Thus, exercising reasonable diligence (i.e., by reading Walton's answer), Plaintiff knew, or reasonably should have known, no later than April 7, 2006, that it was Son, not Father, who loaned Walton the vehicle. Plaintiff did not amend her complaint to add Son as a defendant until June 9, 2008, over two years later. Thus, the Trial Court properly held that the statute of limitations on any personal injury claim against Son had run, and we affirm the Trial Court on this final issue.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Circuit Court of Jefferson County solely for collection of the costs below. Costs on appeal are taxed to the Appellants, Robert and Grace Strine, individually and as guardian and next friend of Ashley Strine, a minor, and their surety, for which execution may issue, if necessary.

_____
D. MICHAEL SWINEY, JUDGE