# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
January 15, 2015 Session

## DANA A. DANIELS v. NATALIE HUFFAKER[1] ET AL.

**Appeal from the Circuit Court for Knox County**
**No. 1-299-11     Dale C. Workman, Judge**

_____

### No. E2014-00869-COA-R3-CV-FILED-MAY 12, 2015

_____

This case involves an automobile accident in which the plaintiff's vehicle was struck by an oncoming pick-up truck when the truck's driver attempted to turn left in front of the plaintiff's vehicle. The plaintiff suffered injuries to her neck and back, as well as significant damage to her vehicle. The plaintiff brought this action, alleging negligence against the driver of the truck and negligent entrustment against the truck's owner, who was the defendant driver's brother-in-law. The plaintiff also alleged that the truck's owner was vicariously liable for damages under the family purpose doctrine. The driver of the truck was never successfully served with process and is not a party to this appeal. The defendant owner of the truck filed a motion for summary judgment. Following a hearing, the trial court granted summary judgment in favor of the defendant owner. The plaintiff appeals. Discerning no reversible error, we affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded

THOMAS R. FRIERSON, II, delivered the opinion of the court, in which CHARLES D. SUSANO, JR., C.J., and D. MICHAEL SWINEY, J., joined.

William A. Hotz and Jeffrey H. Glaspie, Knoxville, Tennessee, for the appellant, Dana A. Daniels.

Beverly D. Nelms, Knoxville, Tennessee, for the appellee, Keith Norris.

---

[1]Ms. Huffaker's name is spelled "Huffacker" in the original complaint, several pleadings, and the final judgment. Because her last name is spelled "Huffaker" on the parties' docketing statement and on the sole pleading Ms. Huffaker filed with the trial court, we employ that spelling throughout this opinion.

**OPINION**

I.  Factual and Procedural Background

The automobile accident giving rise to this action occurred on June 29, 2010.  The facts surrounding the accident itself are undisputed.  The plaintiff, Dana A. Daniels, was driving her 1999 Buick Century eastbound on Dutch Valley Road in Knoxville at approximately 4:00 p.m.  As she approached an apartment complex on her right, a 2000 Ford F-150 pick-up truck ("the truck") traveling in the opposite direction turned left toward the apartment complex and struck Ms. Daniels's vehicle.  The truck was driven by the co-defendant, Natalie Huffaker.  There were no passengers in either vehicle.  As a result of the accident, Ms. Daniels required ongoing medical treatment for injuries to her neck and back.  In addition, it is undisputed that Ms. Daniels's vehicle suffered severe damage, which she later described through deposition testimony as a total loss of the vehicle's value.

According to deposition testimony, Ms. Huffaker was not seriously injured in the accident, and the truck she was operating was eventually repaired.  The truck was owned by the co-defendant, Keith Norris, who is Ms. Huffaker's brother-in-law, the husband of her sister, Beth Norris.  At the time of the accident, Mr. Norris was deployed on active duty in Iraq.  His domicile was a home he and his wife owned in the Knoxville area.  Ms. Huffaker was twenty-eight years old at the time of the accident.  It is undisputed that at some point prior to June 2010, Ms. Huffaker resided with her boyfriend at his apartment on Dutch Valley Drive.  Deposition testimony differed, however, regarding whether at the time of the accident and while Mr. Norris was in Iraq, Ms. Huffaker resided with her boyfriend or with her sister, Ms. Norris.  Ms. Norris testified that Ms. Huffaker resided with her boyfriend and that she only stayed at the Norrises' home as a visitor or to "decompress" when she encountered relationship difficulties.  Ms. Huffaker, however, testified that at the time of the accident, she had been "officially living" at the Norrises' home after losing her job and apartment a few months before.  Ms. Huffaker did acknowledge that she kept her mailing address at her boyfriend's apartment and tended to split her time between that apartment and her sister's home.

Ms. Norris testified that she allowed Ms. Huffaker to drive her husband's truck while Mr. Norris was in Iraq because the truck was "just sitting there" and Ms. Huffaker needed transportation to and from work.  When the accident occurred, Ms. Huffaker was en route from her employment at a nearby gas station/convenience store to her boyfriend's apartment.  She was attempting to turn into the apartment complex's driveway when she collided with Ms. Daniels.

Mr. Norris testified that he never gave express permission to Ms. Huffaker to drive his truck. He concedes, however, that Ms. Huffaker was a "permissive user" of the truck. It is undisputed that Ms. Huffaker was driving with a suspended driver's license and that she maintained no automobile insurance of her own. Both Mr. and Ms. Norris testified, respectively, that they had no knowledge of the status of Ms. Huffaker's driver's license prior to the accident.

On June 24, 2011, Ms. Daniels filed a complaint, alleging negligent operation of the truck on the part of Ms. Huffaker. Specific allegations included reckless driving and failure to properly control the truck, keep a proper lookout ahead, exercise due care, and yield. As to Mr. Norris, Ms. Daniels alleged negligent entrustment and vicarious liability for Ms. Daniels's injuries under the family purpose doctrine and "all statutory and common law presumptions of agency arising from the operation of motor vehicles." She requested $150,000 in compensatory damages and $45,000 in punitive damages. Mr. Norris filed an answer to the complaint on July 27, 2011, admitting that Ms. Huffaker was a permissive user of his vehicle at the time of the accident but denying all personal liability for Ms. Daniels's injuries. Upon a joint motion subsequently filed by Ms. Daniels and Mr. Norris, the trial court entered an agreed order striking Ms. Daniels's request for punitive damages on January 11, 2012.

Mr. Norris filed a motion for summary judgment on July 2, 2013, to which he attached excerpts from deposition testimony given by Mr. Norris, Ms. Norris, and Ms. Daniels. Mr. Norris subsequently filed a memorandum in support of his motion on August 26, 2013. Ms. Daniels filed a response in opposition to the motion for summary judgment on September 12, 2013.

In the meantime, Ms. Daniels was not successful in her attempts to timely serve Ms. Huffaker with process. On August 12, 2013, Ms. Huffaker's counsel filed a "Limited and Special Notice of Appearance," averring that Ms. Daniels had failed to properly serve Ms. Huffaker and that the applicable statute of limitations had expired. Ms. Huffaker subsequently filed a motion to dismiss on October 23, 2013. The trial court granted the motion, dismissing the action as to Ms. Huffaker with prejudice in an agreed order entered on December 19, 2013. Ms. Huffaker eventually provided testimony via deposition in January 2014. Mr. Norris cited Ms. Huffaker's deposition testimony, attaching an excerpt, in a reply he filed to Ms. Daniels's response to the summary judgment motion on February 6, 2014. Ms. Daniels filed a supplemental response the next day, maintaining her argument that Mr. Norris remained liable for the accident under the family purpose doctrine and negligent entrustment.

Following a hearing conducted on February 14, 2014, the trial court entered an order granting summary judgment in favor of Mr. Norris on April 4, 2014. On May 2,

2014, Ms. Daniels filed a notice of appeal and concomitantly filed a Tennessee Rule of Civil Procedure 59.04 motion to alter or amend the judgment. Following a hearing conducted on May 23, 2014, the trial court denied Ms. Daniels's motion to alter or amend the judgment. This Court thereafter treated Ms. Daniels's appeal as timely pursuant to Tennessee Rule of Appellate Procedure 4(d).

## II. Issues Presented

Ms. Daniels presents three issues on appeal, which we have restated as follows:

1. Whether the trial court erred by finding that the *prima facie* evidence of agency provided by Tennessee Code Annotated § 55-10-311(a) was not applicable to the instant action.

2. Whether the trial court erred by granting summary judgment in favor of Mr. Norris upon its finding that the family purpose doctrine was not applicable to the instant action.

3. Whether the trial court erred by granting summary judgment in favor of Mr. Norris upon its finding that the theory of negligent entrustment was not applicable to the instant action.

## III. Standard of Review

Our Supreme Court has succinctly described the applicable[2] standard of review of a trial court's grant of summary judgment:

A summary judgment is appropriate only when the moving party can demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008). When ruling on a summary judgment motion, the trial court must accept the nonmoving party's evidence as true and resolve any doubts concerning the existence of a genuine issue of material fact in favor of the nonmoving party. *Shipley v.*

---

[2]The recently enacted Tennessee Code Annotated § 20-16-101 (Supp. 2012), 2011 Tenn. Pub. Acts 498, is applicable only to cases commenced on or after July 1, 2011. It is therefore is not applicable to this action, which was filed on June 24, 2011. Tennessee Code Annotated § 20-16-101 provides a standard of review for summary judgment with the stated purpose "to overrule the summary judgment standard for parties who do not bear the burden of proof at trial set forth in *Hannan v. Alltel Publishing Co.*, its progeny, and the cases relied on in *Hannan*." *See Sykes v. Chattanooga Hous. Auth.*, 343 S.W.3d 18, 25 n.2 (Tenn. 2011).

*Williams*, 350 S.W.3d 527, 536 (Tenn. 2011) (quoting *Martin v. Norfolk S. Ry.*, 271 S.W.3d 76, 84 (Tenn. 2008)).  "A grant of summary judgment is appropriate only when the facts and the reasonable inferences from those facts would permit a reasonable person to reach only one conclusion." *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009) (citing *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000)).  "The granting or denying of a motion for summary judgment is a matter of law, and our standard of review is de novo with no presumption of correctness." *Kinsler v. Berkline, LLC*, 320 S.W.3d 796, 799 (Tenn. 2010).

*Dick Broad. Co. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 671 (Tenn. 2013). Pursuant to Tennessee Rule of Civil Procedure 56.04, the trial court must "state the legal grounds upon which the court denies or grants the motion" for summary judgment, and our Supreme Court has recently instructed that the trial court must state these grounds "before it invites or requests the prevailing party to draft a proposed order."  *Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 316 (Tenn. 2014).

Insofar as our analysis requires statutory interpretation, our Supreme Court has summarized the principles involved as follows:

When dealing with statutory interpretation, well-defined precepts apply. Our primary objective is to carry out legislative intent without broadening or restricting the statute beyond its intended scope. *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002).  In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing. *In re C.K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005).  When a statute is clear, we apply the plain meaning without complicating the task. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004).  Our obligation is simply to enforce the written language. *Abels ex rel. Hunt v. Genie Indus., Inc.*, 202 S.W.3d 99, 102 (Tenn. 2006).  It is only when a statute is ambiguous that we may reference the broader statutory scheme, the history of the legislation, or other sources. *Parks v. Tenn. Mun. League Risk Mgmt. Pool*, 974 S.W.2d 677, 679 (Tenn. 1998).  Further, the language of a statute cannot be considered in a vacuum, but "should be construed, if practicable, so that its component parts are consistent and reasonable." *Marsh v. Henderson*, 221 Tenn. 42, 424 S.W.2d 193, 196 (1968).  Any interpretation of the statute that "would render one section of the act repugnant to another" should be avoided. *Tenn. Elec. Power Co. v. City of Chattanooga*, 172 Tenn. 505, 114 S.W.2d 441, 444 (1937).  We also must

presume that the General Assembly was aware of any prior enactments at the time the legislation passed. *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995).

*In re Estate of Tanner*, 295 S.W.3d 610, 613-14 (Tenn. 2009).

Regarding the standard of review specific to application of the family purpose doctrine, our Supreme Court has explained:

> Application of the family purpose doctrine involves a mixed question of law and fact. Therefore, "our standard of review is de novo with a presumption of correctness extending only to the lower court's findings of fact." *Abdur'Rahman v. Bredesen*, 181 S.W.3d 292, 305 (Tenn. 2005). Although a presumption of correctness attaches to the trial court's findings of fact, we are not bound by the trial court's determination of the legal effect of its factual findings, nor by its determination of a mixed question of law and fact. *State ex rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Grp. Trust*, 209 S.W.3d 595, 599 (Tenn. Ct. App. 2006).

*Starr v. Hill*, 353 S.W.3d 478, 481-82 (Tenn. 2011) (analyzing the family purpose doctrine within the context of the trial court's grant of summary judgment).

IV. *Prima Facie* Evidence Pursuant to Tennessee Code Annotated § 55-10-311(a)

Ms. Daniels contends that the trial court erred by failing to find a statutorily created agency relationship between Mr. Norris as the owner of the truck and Ms. Huffaker as the driver, pursuant to Tennessee Code Annotated § 55-10-311(a) (2012). The trial court in its specific findings, incorporated into the final judgment, found no evidence that Ms. Huffaker was acting as Mr. Norris's agent when she drove his truck. The court found that although Ms. Huffaker may have been a "permissive user," that status did not make her an agent of the owner. On appeal, Mr. Norris has conceded that Ms. Huffaker was a permissive user of the truck. He argues that the trial court properly found that Tennessee Code Annotated § 55-10-311(a) does not operate to create an agency relationship between the truck's owner and the driver in this action because no employer-employee relationship existed between them. We agree with Mr. Norris on this issue.

As a threshold matter, we note that the truck's undisputed registration in Mr. Norris's name on the date of the accident is *prima facie* evidence of his ownership of the vehicle. *See* Tenn. Code Ann. § 55-10-312(a) (2012); *see also Gray v. Mitsky*, 280

6

S.W.3d 828, 830 (Tenn. Ct. App. 2008). Ms. Daniels's argument then requires an analysis of Tennessee Code Annotated § 55-10-311(a), which provides:

> (a)    In all actions for injury to persons and/or to property caused by the negligent operation or use of any automobile, auto truck, motorcycle, or other motor propelled vehicle within this state, proof of ownership of the vehicle shall be prima facie evidence that the vehicle at the time of the cause of action sued on was being operated and used with authority, consent and knowledge of the owner in the very transaction out of which the injury or cause of action arose, and the proof of ownership likewise shall be prima facie evidence that the vehicle was then and there being operated by the owner, or by the owner's servant, for the owner's use and benefit and within the course and scope of the servant's employment. The prima facie evidence rules of the preceding sentence shall also apply in cases of the negligent operation of a vehicle being test-driven by a prospective purchaser with the knowledge and consent of the seller or the seller's agent, whether or not the seller or the seller's agent is present in the vehicle at the time of the alleged negligent operation.

In support of her argument, Ms. Daniels relies in part on this Court's decision in *Strine v. Walton*, 323 S.W.3d 480 (Tenn. Ct. App. 2010), for the proposition that "'an owner's testimony negating the issue of agency, standing alone, cannot overcome the statutorily created prima facie evidence of an owner-driver agency relationship created by Tennessee Code Annotated section 55-10-311(a).'" *See Strine*, 323 S.W.3d at 488 (quoting *Godfrey v. Ruiz*, 90 S.W.3d 692, 695-96 (Tenn. 2002)). However, this Court in *Strine* explained the important distinction between the first and second parts of the statute as follows:

> The first part of the statute establishes prima facie evidence of knowledge and consent on the part of the owner. The second part of the statute establishes prima facie evidence of an agency relationship when the vehicle is being operated by the owner's servant/employee. Both parts of the statute were at issue in *Godfrey* and the Supreme Court held that the owner had failed to negate the prima facie evidence of an agency relationship. The

present case does not involve a servant/employment situation, and thus there is no statutorily created prima facie agency relationship.

*Id.* at 489 n.3.[3]

In *Strine*, this Court concluded that Tennessee Code Annotated § 55-10-311(a) (2012) established *prima facie* evidence that the owner of the subject vehicle had allowed his adult son to loan the vehicle to an unrelated driver with the "authority, consent, and knowledge" of the owner. *Id.* at 488. This Court did not, however, find that the agency relationship of employer/employee existed and instead analyzed the issue according to the family purpose doctrine. *Id.* at 489 (concluding that "Father's evidence was insufficient to overcome the prima facie evidence created by the statute that [the driver] was operating the vehicle with Father's authority, knowledge, and consent."). As this Court further explained:

> Although the statute creates prima facie evidence that [the driver] was operating the vehicle with the authority, knowledge, and consent of Father, this does not automatically mean that Father is liable for [the driver's] actions. Tenn. Code Ann. § 55-10-311 does not create any cause of action but rather establishes certain prima facie evidence. "Permissive use, standing alone, establishes only a bailment. In and of itself it is not a basis for the imposition of personal liability upon the owner of a vehicle." *Hamrick v. Spring City Motor Co.*, 708 S.W.2d 383, 385 (Tenn. 1986). To hold otherwise would create strict liability for a vehicle owner anytime someone was allowed to drive his or her vehicle, which is not the law in Tennessee; hence the law addressing agency relationships, the family purpose doctrine, and the tort of negligent entrustment, etc.[FN4]

> [FN4] If an owner of a vehicle were liable simply because they allowed someone to use their car, then we would be imposing strict liability and there would be no need whatsoever for the family purpose doctrine or the tort of negligent entrustment.

*Id.*

Similarly, in the instant action, we conclude that the *prima facie* evidence created by Tennessee Code Annotated § 55-10-311(a) establishes that Ms. Huffaker was driving

---

[3]Effective July 1, 2012, the General Assembly amended Tennessee Code Annotated § 55-10-311 to add what is now subsection (b) regarding automobile dealers who provide loaner vehicles to customers while their vehicles are being repaired. In *Strine*, this Court was referring to the two parts of subsection (a), which have remained unaffected by the 2012 amendment. *See* 2012 Pub. Acts, Ch. 884, § 1.

the truck on the day of the accident with Mr. Norris's authority, knowledge, and consent as the truck's owner. There existed no evidence, however, that the vehicle was being operated by the owner's employee. The statutorily created *prima facie* evidence does not establish an agency relationship between Mr. Norris and Ms. Huffaker. *See Strine*, 323 S.W.3d at 489. As in *Strine*, this leads us to Ms. Daniels's contention that the trial court erred when it granted Mr. Norris summary judgment on her claim brought pursuant to the family purpose doctrine. *See id.*

## V. Family Purpose Doctrine

Ms. Daniels contends that the trial court erred by finding that she would be unable to prove two required elements of the family purpose doctrine at trial. Mr. Norris contends that the trial court properly found that no genuine issue of material fact existed that would show that Mr. Norris was a head of Ms. Huffaker's household or that Ms. Huffaker was fulfilling a family purpose when the accident occurred. Upon our review of the undisputed facts and the record as a whole, we conclude that the trial court properly granted summary judgment on this issue because Ms. Daniels would be unable to prove that Mr. Norris was a head of Ms. Huffaker's household when the accident occurred. *See Sykes*, 343 S.W.3d at 25 (explaining that pursuant to the applicable summary judgment standard, a moving party may shift the burden of production to the non-moving party by "show[ing] that the nonmoving party cannot prove an essential element of the claim at trial.") (quoting *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8 (Tenn. 2008)).

The family purpose doctrine is "'a court-created legal fiction' that employs agency principles to hold the owner of the vehicle vicariously liable" for a family member's negligent operation of the vehicle. *See Starr*, 353 S.W.3d at 482 (quoting *Thurmon v. Sellers*, 62 S.W.3d 145, 156 (Tenn. Ct. App. 2001)). In order for the family purpose doctrine to apply to the instant action, Ms. Daniels first must be able to show that Mr. Norris was a head of Ms. Huffaker's household. *See id.* Provided she could establish this element at trial, Ms. Daniels would also need to show that Mr. Norris maintained the truck "'for the purpose of providing pleasure or comfort for [his] family'" and that Ms. Huffaker was using the truck at the time of the accident "'in furtherance of that purpose with the permission, either express or implied'" of Mr. Norris. *See id.* (quoting *Strine*, 323 S.W.3d at 489) (additional internal citations omitted). *See also Thurmon v. Sellers*, 62 S.W.3d 145, 156 (Tenn. Ct. App. 2001) ("The true test is whether the driver was engaged in the owner's business at the time of the accident, with business here meaning the furnishing of pleasure to the owner's family.").

In determining that the family purpose doctrine did not apply to this action, the trial court stated its specific findings in relevant part:

The testimony was, basically, except for times when she had a flare-up or disagreement with her boyfriend, at best she would be staying with the boyfriend at least three days a week, then staying with maybe her sister part of the time. But the other problem is I don't think the Defendant maintained this vehicle for the use of that sister, and her intermediate staying in the home. And I don't think the sister was on the Family Purpose, because this is not a direct relative. This is a sister staying there and I don't think he maintained this vehicle for the purpose of letting the sister drive to go see her boyfriend. You could make the argument letting her drive it to work may have been.

But for those two reasons I don't think the vehicle was being used for the Family Purpose, if she is a member of the family, and for what purpose it was maintained. Because it is different from an immediate family member. And secondly, I don't [think] he maintained this vehicle for that type of family use. I think she's a transient visitor in the home, rather than a constant resident. I don't think there was ever any intent, which is the test here, of Mr. Norris to maintain that vehicle for her use.

The trial court thus found that Ms. Daniels would not be able to prove two essential elements of the family purpose doctrine: (1) that Mr. Norris was a head of Ms. Huffaker's household and (2) that Ms. Huffaker had been using the vehicle in furtherance of a family purpose.

In considering whether the owner of a vehicle is a head of the driver's household under the family purpose doctrine, "appropriate factors to consider include whether there is a family relationship between the owner and the driver and whether the owner has a duty to support the driver." *Starr*, 353 S.W.3d at 485-86 ("Our review of the common law in Tennessee and elsewhere reveals that the identification of a family member as a head of the household is primarily based on his or her family relationship and duty to support the driver rather than place of residency."). In the instant action, a family relationship of brother-in-law to sister-in-law existed between Mr. Norris and Ms. Huffaker at the time of the accident. The trial court found, however, that in relation to Mr. Norris, Ms. Huffaker was not "an immediate family member" and that she was only a "transient visitor" in the Norrises' home. Mr. Norris asserts that these findings indicate that Ms. Daniels would be unable to prove at trial that he had a duty to support Ms. Huffaker. He posits that Ms. Daniels would therefore be unable to prove that he was a head of Ms. Huffaker's household. We agree.

10

At the time of the accident, Ms. Huffaker was twenty-eight years old. She testified that she had attended college for four semesters but was no longer enrolled in classes. In 2010, she had been employed by two companies, one a restaurant and the other a gas station/convenience store. By June 2010, she was working only at the gas station/convenience store. At some point a few months before the accident, Ms. Huffaker "lost" the apartment she had been renting and moved in with her boyfriend at his apartment complex on Dutch Valley Drive. Ms. Huffaker testified that she then moved in with Ms. Norris for four to six months while Mr. Norris was stationed in Iraq. She qualified this by stating that she "was, honestly, back and forth because that's where [her] boyfriend live[d] as well . . . ." She explained that her boyfriend's apartment was located approximately two and one-half miles from the Norrises' home, and she estimated that she went to her boyfriend's apartment approximately three days a week. She received her mail at her boyfriend's address. At the time of the January 2014 deposition, Ms. Huffaker resided with her boyfriend at his same Dutch Valley Drive address. When questioned regarding whether the Norrises ever provided her with any kind of financial support, Ms. Huffaker answered, "I don't believe so." When questioned regarding whether she had paid rent to Ms. Norris in 2010, she stated that she could not remember specifically but that she "was probably paying rent to her."

Mr. Norris testified that he was deployed on active duty in February 2010 and returned home from Iraq in August 2010. When he arrived home, his truck was in the process of being repaired following the accident. When questioned regarding where he believed Ms. Huffaker resided at the time of the accident, he stated that Ms. Huffaker "was kind of a floater" but that to the best of his knowledge, she lived with her boyfriend at the apartment on Dutch Valley Drive. Ms. Norris testified that in June 2010, Ms. Huffaker "mainly lived with her boyfriend, but she went back and forth between our homes." Ms. Norris explained that when Ms. Huffaker was in conflict with her boyfriend, "she knew that she could . . . just come to our house and decompress and stay as long as she wanted, because she's my sister."

Ms. Daniels acknowledges that Ms. Huffaker was an adult earning her own income at the time of the accident. She argues, however, that Ms. Huffaker was residing in the Norrises' home and that her status as a sibling to Ms. Norris created a household consisting of the Norrises and Ms. Huffaker. Ms. Daniels points to this Court's observation in *Nat'l Ins. Assoc. v. Simpson*, 155 S.W.3d 134, 139 (Tenn. Ct. App. 2004), that "the legal significance of *paterfamilias* has given way in modern times to a broader concept of family." In *Nat'l Ins.,* this Court defined "household" for the purpose of analyzing a family member exclusion provision in an automobile insurance policy as "a group or set of persons who dwell together as a family under the same roof." *Id.* This Court further explained:

11

> Residence in a household also requires a degree of permanence and intention to remain in the household for an indefinite period of time. It connotes a settled or permanent status. Thus, a temporary visit by a relative does not make the relative a resident of the household because it is temporary and there is no melding of the family unit. Likewise, a landlord-tenant relationship or a simple roommate arrangement does not create a household.

*Id.* (internal citations omitted). Thus, even by this somewhat more expansive definition applicable to determining household membership for insurance purposes, Ms. Huffaker must still be considered a transient visitor to the Norrises' household who gave no indication during the months of Mr. Norris's deployment that she intended to remain for an indefinite period of time or maintain permanent status in the home. In addition, Ms. Huffaker's testimony that she may have paid rent to Ms. Norris would indicate that she considered herself in the nature of a tenant rather than a household member.

As to the factor of a duty to support, Ms. Daniels cites to no controlling authority that would indicate Mr. Norris was under a recognized duty to support his adult sister-in-law. She instead asks this Court to "extend" the doctrine of assumption of duty to conclude that it would be possible for a jury to find that Mr. Norris had assumed a duty to support Ms. Huffaker by providing her with shelter and possibly other necessities. As Mr. Norris points out, the authorities upon which Ms. Daniels relies in support of this argument address a host's assumed duty to prevent foreseeable injury or render aid to a guest. *See, e.g., Lindsey v. Miami Dev. Corp.*, 689 S.W.2d 856 (Tenn. 1985) (involving a host's duty to render aid to an injured guest); *Downen v. Testa*, No. E2002-01320-COA-R3-CV, 2003 WL 2002411 (Tenn. Ct. App. May 1, 2003), *perm. granted* (Tenn. Dec. 1, 2003) (involving a host's duty when a guest consumed alcohol prior to an automobile accident). We decline to extend the doctrine of assumption of duty in this manner. Moreover, even resolving the existence of any genuine issue of material fact in Ms. Daniels's favor, as we must on summary judgment, we are unable to conclude that Mr. Norris was supporting his sister-in-law at the time of the accident or that he was under a duty to do so. We therefore conclude that Mr. Norris was not a head of Ms. Huffaker's household at the time of the accident.

Ms. Daniels also posits that a genuine issue of material fact exists regarding whether Ms. Huffaker was operating the truck at the time of the accident in furtherance of a family purpose. She argues that because testimony differed as to whether Ms. Huffaker was paying rent to Ms. Norris, use of the truck for Ms. Huffaker's employment could be found to constitute a family purpose. Additionally, she argues that because furthering the pleasure of one family member can be considered a family purpose, Ms. Huffaker's travel to her boyfriend's apartment on the day of the accident could constitute a family

purpose. *See Starr*, 353 S.W.3d at 487 (noting that providing a vehicle as a source of transportation for one family member may provide a benefit to the family unit as a whole); *Gray*, 280 S.W.3d at 831 ("The case law in this state teaches that a driver can be operating a vehicle for a family purpose 'even if the driver is only using the automobile for his own pleasure or convenience.'") (quoting *Thurmon*, 62 S.W.3d at 156)).

Ms. Daniels's arguments in this regard are dependent upon her argument that Ms. Huffaker was a member of the Norris household. Having concluded that no genuine issue of material fact exists that would allow Ms. Daniels to prove that Ms. Huffaker was a member of the Norris household, we further conclude that any issue regarding the purpose of Ms. Huffaker's use of the truck is pretermitted as moot. Upon our thorough review of the record, we determine that the trial court did not err by granting summary judgment in favor of Mr. Norris on Ms. Daniels's claim pursuant to the family purpose doctrine.

## VI. Negligent Entrustment

Ms. Daniels also contends that the trial court erred by concluding that she would be unable to prove that Mr. Norris was liable for her damages through the tort of negligent entrustment. She maintains that Ms. Huffaker was demonstrably an incompetent driver at the time of the accident because she was unfamiliar with the truck she was driving and because she did not possess a valid driver's license. Mr. Norris posits that Ms. Huffaker's relative unfamiliarity with the truck and suspended license are not proof of incompetence and that even if they were, Mr. Norris was unaware of them. We conclude that given the undisputed facts underlying this action, Ms. Daniels would not be able to prove the essential element of the entrustor's knowledge of alleged incompetence.

In comparison to the family purpose doctrine, liability under the doctrine of negligent entrustment attaches to the vehicle's owner for the owner's act of entrusting the vehicle to an incompetent driver, as opposed to liability attaching vicariously to the owner for the driver's act of operating the vehicle negligently. *See Ali v.* Fisher, 145 S.W.3d 557, 564 (Tenn. 2004) (holding that negligent entrustment does not create vicarious liability). For a plaintiff to succeed on a claim of negligent entrustment "'requires proof that a chattel was entrusted to one incompetent to use it with knowledge of the incompetence, and that its use was the proximate cause of injury or damage to another.'" *West v. E. Tenn. Pioneer Oil Co.*, 172 S.W.3d 545, 554 (Tenn. 2005) (quoting *Woodson v. Porter Brown Limestone Co.*, 916 S.W.2d 896, 907 (Tenn. 1996)). In *West*, our Supreme Court also cited with approval the following definition of negligent entrustment:

13

One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

*West*, 172 S.W.3d at 554 (quoting Restatement of (Second) of Torts § 390 (1965)).

Ms. Daniels attached a printout of Ms. Huffaker's "criminal record" to her response to the motion for summary judgment. This record, later acknowledged by Ms. Huffaker in her deposition testimony, demonstrated that she had pled guilty on September 3, 2008, in the Knox County General Sessions Court to a charge of driving without a valid license for the type of vehicle and had incurred a $10.00 fine. Ms. Huffaker testified that by the time of the deposition in January 2014, she had not possessed a valid driver's license "for years." Regarding her driving record, she stated: "Whenever I got pulled over for speeding on Pellissippi, I would also get in trouble for not having – or having expired tags." According to Ms. Huffaker, her driver's license had been suspended by the time of the accident, and had remained suspended, because of her inability to pay accumulated fines assessed for speeding and expired vehicle registration. Ms. Huffaker further testified that Ms. Norris knew nothing of her driver's license suspension or driving record until after the accident at issue occurred. Mr. and Ms. Norris, respectively, corroborated this lack of knowledge before the accident.

The trial court in its specific findings, incorporated into the final judgment, stated in relevant part:

I don't think this [is] a Negligent Entrustment case for several reasons. . . .

I think the wife is acting as the alter ego of the Defendant in this case. So what she did, I think in normal situations, would be considered not agent but she's acting for the benefit of her husband and for the benefit of them. But in this case there's no proof in this record that [Mr. and Mrs. Norris] knew anything about the way [Ms. Huffaker] drove; either he or she, would indicate that this person was a dangerous driver for some reason.

The driver's license thing you can argue they should have known, or how you would know without somebody saying it, I don't know. But even if you can get over that, I don't think that means you're a dangerous driver, which is what the case law says. It's not the relevant test for a dangerous driver. So I don't think there's a Negligent Entrustment case, or a

contested issue of fact about a Negligent Entrustment. So The Court grants the motion to dismiss the case against Mr. Norris on the basis of Negligent Entrustment.

We address first the issue of Ms. Huffaker's alleged incompetence at the time she was entrusted with the truck. Ms. Daniels bases her incompetence argument on the undisputed facts that (1) Ms. Huffaker was relatively unfamiliar with the truck and (2) she was driving with a suspended driver's license at the time of the accident. Regarding her unfamiliarity with the truck, Ms. Huffaker testified that she had driven it only a few times before the day the accident occurred. Ms. Daniels offered no proof that this particular vehicle, a Ford F-150 pick-up, required specialized driver training to operate. She also offers no authority for her premise that unfamiliarity with a particular vehicle renders the driver incompetent. For us to so hold would be to indicate that an individual driving a new type of vehicle would *ipso facto* be an incompetent driver in that situation, and we certainly find no basis to reach such a conclusion.

Regarding the effect of Ms. Huffaker's suspended driver's license, Ms. Daniels relies on this Court's decision in *Herndon v. Hughes*, No. 02A01-9706-CV-00128, 1998 WL 90745 (Tenn. Ct. App. Mar. 4, 1998), for the proposition that a driver's revoked license can establish the driver as incompetent. We determine *Herndon*, which involves a commercial car seller's entrustment of a vehicle to an unlicensed driver, to be factually distinguishable from the instant action. In *Herndon*, this Court concluded that summary judgment was improperly granted to the car seller primarily because "the record before the trial court consisted only of the Complaint and an unsworn Answer" and the complaint stated a possible cause of action. *Herndon*, 1998 WL 90745 at *2-4 ("Although we do not feel that lack of a driver's license necessarily equates with driving incompetence, some jurisdictions have created a statutory duty on the part of car dealers to investigate whether a potential customer is properly licensed."). Moreover, this Court previously has held that "in Tennessee negligent entrustment cannot be inferred from the mere fact that the driver did not have a driver's license." *Person v. Wilson*, No. M2006-00873-COA-R3-CV, 2007 WL 1585171 at *4 (Tenn. Ct. App. May 31, 2007) (citing *Dukes v. McGimsey*, 500 S.W.2d 448, 451-52 (Tenn. Ct. App. 1973)); *see also Smith v. Henson*, 381 S.W.2d 892, 898 (Tenn. 1964) ("[T]he mere fact that an individual is unlicensed does not render the owner of an automobile liable for the negligence of a borrower where such fact has no causal connection with the injury or damage.").

Although the absence of a driver's license would not give rise to a genuine issue of material fact as to Ms. Huffaker's competence to use the truck safely, the fact that she had numerous speeding citations underlying the suspension of her license could. *See, e.g., Strine*, 323 S.W.3d at 483, 491 (emphasizing that under a different set of procedural circumstances, the plaintiff may have been able to bring an action for negligent

15

entrustment against the son of the vehicle's owner when the son entrusted the vehicle to an unrelated driver who had been found at fault in a previous accident and had a record of speeding citations and other traffic citations). The fatal flaw in Ms. Daniels's claim, however, is her failure to present any evidence that Ms. Norris had knowledge of Ms. Huffaker's history of speeding citations. The unrefuted deposition testimony in the record by Ms. Huffaker, Mr. Norris, and Ms. Norris is that the Norrises had no knowledge of Ms. Huffaker's driving record at the time of entrustment. Whether Mr. Norris, as the sole remaining named defendant, personally entrusted the truck to Ms. Huffaker or only did so indirectly through Ms. Norris is immaterial if no genuine issue of material fact exists to prove that Ms. Norris possessed knowledge of Ms. Huffaker's alleged incompetence as a driver at the time of the entrustment.[4]

We determine that no genuine issue of material fact exists that would allow Ms. Daniels to prove the essential element of the entrustor's knowledge of Ms. Huffaker's alleged incompetence within the context of negligent entrustment. The trial court did not err in granting summary judgment to Mr. Norris on this claim.

## VII. Negligence *Per Se*

Finally, Ms. Daniels asserts within her negligent entrustment argument on appeal that the Norrises were under a statutory duty to inspect for a valid driver's license before allowing Ms. Huffaker to operate their vehicle, pursuant to Tennessee Code Annotated § 55-50-504(d) (2012). Tennessee Code Annotated § 55-50-504 delineates, *inter alia*, the penalties for driving a motor vehicle while such privilege is cancelled, suspended, or revoked. Subsection (d) provides:

(d)     No person shall authorize or knowingly permit a motor vehicle owned by the person or under the person's control to be driven upon any highway by any person who is not authorized hereunder or in violation of any of the provisions of this chapter.

Although this issue is couched within her negligent entrustment argument, Ms. Daniels raises the issue as a matter of negligence *per* se and does so for the first time on appeal. *See Rains v. Bend of the River*, 124 S.W.3d 580, 589 (Tenn. Ct. App. 2003) ("Negligence per se arises when a legislative body pronounces in a penal statute what the conduct of a reasonable person must be, whether or not the common law would require similar conduct."); *see also Shorter v. McManus*, No. 03A01-9704-CV-00132, No. 1997 WL 718972 at *6-7 (analyzing an alleged violation of Tennessee Code Annotated § 55-

---

[4]We note that although Mr. Norris testified that he did not have knowledge of the entrustment to Ms. Huffaker until after the accident occurred, he has conceded that upon his deployment, he left the truck within the full control of Ms. Norris and that Ms. Huffaker was a permissive user of the truck.

50-504(d) as an allegation of negligence *per se*). We therefore find that Ms. Daniels has waived her right to raise the issue of negligence *per se* as to Mr. Norris and the alleged violation of Tennessee Code Annotated § 55-50-504(d) on appeal. *See* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."); *Waters v. Farr*, 291 S.W.3d 873, 918 (Tenn. 2009) ("One cardinal principle of appellate practice is that a party who fails to raise an issue in the trial court waives its right to raise that issue on appeal.").[5]

## VIII. Conclusion

For the reasons stated above, we affirm the order of the trial court granting summary judgment in favor of the appellee, Keith Norris. The costs on appeal are assessed against the appellant, Dana A. Daniels. This case is remanded to the trial court, pursuant to applicable law, for collection of costs assessed below.

_____
THOMAS R. FRIERSON, II, JUDGE

---

[5]We recognize that Ms. Daniels included in her complaint a claim for vicarious liability according to "all statutory and common law presumptions of agency and ownership arising from the operation of motor vehicles." In her motion to alter or amend the judgment, Ms. Daniels argued, as she does on appeal, that the trial court had failed to address an agency relationship created by Tennessee Code Annotated § 55-10-311(a). We find no indication in the record that she addressed at any time prior to appeal an issue of negligence *per se* pursuant to Tennessee Code Annotated § 55-50-504(d). *See Strine*, 323 S.W.3d at 490 ("We cannot conclude that the Trial Court committed error when ruling on an issue if there is nothing in the record establishing that the issue actually was raised below.").